## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| EXPRESS HOMEBUYERS USA, LLC, <br> 6564 Loisdale Ct., Suite 215 <br> Springfield, Virginia 22150, <br><br> *Plaintiff,* <br><br> v. <br><br> WBH MARKETING, INC., <br> 2140 E. Southlake Blvd., Suite L615 <br> Southlake, Texas 76092-6516, <br><br> AND <br><br> JEREMY BRANDT, <br> 2140 E. Southlake Blvd., Suite L615 <br> Southlake, Texas 76092-6516. <br><br> *Defendants.* <br> _____ | Civil Action No. _____ <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff Express Homebuyers USA, LLC ("Express Homebuyers" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendants WBH Marketing, Inc. ("WBH") and Jeremy Brandt ("Brandt") (collectively, "Defendants") seeking: (1) cancellation of U.S. Trademark Registration Nos. 3,149,336 and 3,235,523; (2) a declaratory judgment that the purported marks disclosed therein are invalid and unenforceable and therefore not infringed by Express Homebuyers; and, (3) a judgment for money damages caused by Defendants' tortious conduct. For its complaint, Express Homebuyers alleges as follows:

### PRELIMINARY STATEMENT AND NATURE OF THE ACTION

1.     This case is about the common, ubiquitous, and generic phrase "we buy houses"—a phrase that has been used in the real estate industry since the real estate industry first came into existence. There is nothing unique, special, or distinctive about a real estate company or

professional saying, either in print or in online advertising, that they "buy houses."   Indeed, thousands of real estate companies and professionals have used, and continue to use, this phrase in describing what they do.

2.      Defendants are quintessential trademark bullies.  They claim to have a nationwide grip on the generic phrase "we buy houses."   This action arises out of the Defendants' inappropriate, multi-State campaign of intimidation and harassment over the decades-long, widespread use in the real estate industry of the generic phrase "we buy houses."  Defendants have taken the head-snapping position that they, **_and they alone_**, are the only ones in the entire United States that can use the phrase "we buy houses" in all forms of media—print, online, and otherwise—related to real estate goods and services.

3.      Yet, as alleged herein, and as the evidence will show, the Defendants never had legitimate rights in their alleged trademark in the first place.  That is because the Defendants defrauded the U.S. Patent and Trademark Office and entered into a phony, collusive agreement with a third party to supposedly obtain exclusive rights to the phrase "we buy houses."  At all relevant times herein, Defendants were fully aware that they did not have legitimate or enforceable federal trademark rights but they engaged in their wrongful conduct anyway.

4.      Indeed, despite this knowledge, Defendants have, in effect, attempted (sometimes successfully) to "shake down" dozens of real estate businesses across the United States.  They have done so with threats that are then followed by requests that the threatened business pay the Defendants significant sums of money in exchange for the continued use of the generic and ubiquitous phrase "we buy houses."

5.      The Defendants brought their bullying tactics to the Commonwealth of Virginia in 2016.  In July of that year, WBH embarked on an onslaught against Express Homebuyers' use of the phrase "we buy houses" to describe its direct home buying services online.

6.      In particular, WBH filed numerous take-down complaints with YouTube.com, alleging that approximately 91 of Express Homebuyers' videos supposedly violated WBH's rights in its purported trademarks, WE BUY HOUSES and WEBUYHOUSES.COM (collectively "the WE BUY HOUSES Marks" or "Marks").  YouTube removed all 91 videos based on WBH's assertions that it supposedly had federal trademark rights in the generic phrase "we buy houses" that were broad enough to capture use of that phrase in online advertising.  Defendants took these actions for the improper and illegal purpose of extracting money from Plaintiff.

7.      Express Homebuyers brings this action to stop, once and for all, Defendants' bullying tactics.  Plaintiff seeks cancellation of the registrations associated with the WE BUY HOUSES Marks on the ground that they are *void ab initio* because they were procured by fraud and/or improper assignment.  In the alternative, the phrase "we buy houses" has been used for many years by numerous businesses and professionals, rendering the Marks generic and abandoned.  Plaintiff Express Homebuyers also seeks a declaration that it did nothing wrong when it used the "we buy houses" phrase in its online advertising, that the Marks are invalid, and therefore have not been infringed by Express Homebuyers.  Finally, and independent of its requests for declaratory relief, Plaintiff seeks to recover money damages caused by the Defendants' tortious act of taking down almost one hundred of Plaintiff's online advertisements.

## PARTIES

8.      Plaintiff Express Homebuyers is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business at 6564 Loisdale Court, Suite 215, Springfield, Virginia 22150.

9.     Defendant WBH is a Texas corporation with its principal place of business at 2140 E. Southlake Blvd., Suite L-615, Southlake, Texas 76092-6516.

10.     Defendant Brandt is a citizen and resident of Texas, with an address of 2140 E. Southlake Blvd., Suite L-615, Southlake, Texas 76092-6516.  Defendant Brandt is the founder and CEO of WBH.  At all times relevant herein, Defendant Brandt directed, ordered, or otherwise substantially participated in all of WBH's business activities related to wrongful conduct alleged in this Complaint.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over Express Homebuyers' request for a declaratory judgment pursuant to 28 U.S.C. §§ 1331, 2201, and 2202.  This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq* and the laws of the Commonwealth of Virginia, which are all within the subject matter jurisdiction of this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332(a)(1), 1338(a), and 1367(a).

12.     WBH's infringement allegations against Express Homebuyers, as expressed in its take-down letters to YouTube.com and the resulting removal of 91 of Express Homebuyers' online advertisements, gives rise to an actual and justiciable controversy between the parties as to the invalidity and non-infringement of the WE BUY HOUSES Marks.  WBH's infringement allegations and the resulting removal of Express Homebuyers' online advertising poses actual and imminent injury to Express Homebuyers that can only be redressed by judicial relief and is of sufficient immediacy to warrant the issuance of a declaratory judgment.  Absent cancellation of the WE BUY HOUSES Marks and a declaration of invalidity and noninfringement, Express Homebuyers will continue to suffer harm to its business.

13.     Defendants are subject to personal jurisdiction in this District because the Defendants transact business within the Commonwealth of Virginia; committed tortious and other

wrongful acts within the Commonwealth; directed their conduct at, and specifically targeted, Plaintiff in Virginia; and/or otherwise committed tortious and other wrongful acts outside of the Commonwealth that caused harm within the Commonwealth.  Defendant WBH regularly does or solicits business, or engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the Commonwealth of Virginia.

14.     At all times relevant herein, Defendant Brandt had direct, personal involvement in the decisions and actions that are related to the damages incurred by Plaintiff Express Homebuyers as a result of Defendant WBH's wrongful conduct.  At all times relevant herein, Defendant Brandt controlled Defendant WBH and was the central figure in the wrongful acts alleged in this Complaint.

15.     Venue is proper under 28 U.S.C. § 1391 because:  (1) a substantial part of the events material to Plaintiff's causes of action occurred in this District, (2) all Defendants are subject to personal jurisdiction in this District at the time this action commenced, and (3) the Plaintiff suffered harm in this District.

## FACTS COMMON TO ALL COUNTS

16.     Plaintiff Express Homebuyers has been engaged in the direct home buying industry for more than thirteen years.  Over the course of its existence, Express Homebuyers has purchased and rehabilitated more than 2,000 homes.  Because of its dedication to efficient, cost-effective, and high quality services, Express Homebuyers has become a very prominent direct homebuyer in the Maryland, Washington D.C., and Virginia regions, among others.

17.     Since 2003, Plaintiff Express Homebuyers used the phrase "we buy houses" to describe the services that it provides.  Between 2003 and 2016, Plaintiff did not receive any complaints from any company or individual that Plaintiff's use of the phrase "we buy houses" was

inappropriate or otherwise consisted of infringement on a person's or company's intellectual property.

18.     Defendant WBH also provides direct home buying services, by referring home owners in the United States who seek to sell their homes for cash to independent local operators that are affiliated with WBH.  Defendant Brandt is the founder and CEO of WBH and controls its operations and business.

19.     WBH is listed as the current owner of U.S. Trademark Registration No. 3,149,336 ("the '336 Registration") for the purported trademark WE BUY HOUSES for "real estate *pamphlets*, real estate *informational flyers*, real estate *informational sheets*, real estate *leaflets*, real estate *booklets*, real estate *informational letters*, real estate *newsletters*, *printed forms*, *printed guides* for real estate, *printed* instruction, educational, and teaching materials for real estate, *printed* paper signs, *printed* reports featuring real estate" in International Class 16. (Emphasis added.)

20.     Defendant WBH does not have now, and never has had, federal trademark rights and the exclusive right to the use of that phrase in connection with online advertising.  At all times relevant herein, Defendants were fully aware of the limited scope of their WE BUY HOUSES mark.  At all times relevant herein, Defendants were fully aware that the phrase "we buy houses" has always been widely used in print and in online advertising.  And, at all times relevant herein, Defendants were aware that extending the WE BUY HOUSES mark to cover online advertising was inappropriate and wrong.

21.     Despite this knowledge, Defendants WBH, at the direction of Defendant Brandt, caused to take down from YouTube approximately 91 of Plaintiff's online advertisements that used the phrase "we buy houses."

22.     WBH is also listed as the current owner of U.S. Trademark Registration No. 3,235,523 ("the '523 Registration") for the purported service mark WEBUYHOUSES.COM for "real estate services, namely, referrals in the field of real estate procurement for others" in International Class 35 and "real estate and investment services, namely providing on-line information in the field of real estate procurement for others" in International Class 36.

23.     This controversy arises out of Defendants improperly seeking to stop Plaintiff, and others, from using the generic phrase "we buy houses" for home buying and real estate services by asserting exclusive rights to use its WE BUY HOUSES Marks.  The validity and enforcement of Defendants' WE BUY HOUSES Marks fall directly at the center of this dispute.

**Prosecution History of the WE BUY HOUSES Marks**

24.     On July 11, 2001, an individual named Michel Payette ("Payette') filed an intent-to-use Application No. 78,073,479 ("the '479 Application") with the U.S. Patent and Trademark Office ("PTO") for the typeset mark WE BUY HOUSES for various real estate printed materials, in International Class 16, which covers only printed material or material on paper.  On December 10, 2002, the PTO issued a Notice of Allowance, affording Payette six months to file a Statement of Use to prove actual use of the mark or, in the alternative, to request an extension of time within which to prove actual use.

25.     On information and belief, Payette could not prove use of WE BUY HOUSES because the mark was never used during Payette's period during which he allegedly owned the '479 Application.  In a March 2002 letter sent in response to the PTO's request for more information, Payette stated that:

> "the goods offered are in the nature of instructional materials, relating to a specific method of financing real estate transactions.  The instructional materials ***are to be offered*** in both printed and audio/visual formats.  ***They will be*** marketed to individuals who are interested in building wealth through the creative financing methods, which form the foundation for the materials."  (Emphasis added.)

However, Payette did not attach any of the referenced "instructional materials" to his correspondence, presumably because they did not exist. Instead, he attached a "fact sheet" or business outline which simply outlined a few methods and ideas for future business endeavors.

26.     Payette ultimately filed two Extensions of Time, rather than a Statement of Use, for the WE BUY HOUSES mark—the first on May 16, 2003 and the second on December 10, 2003.

27.     In February 2003, while the '479 Application was still pending, an entity unrelated to Payette, Webuyhouses.com, Corp., filed Application No. 76,491,672 ("the '672 Application") to register the typeset service mark WEBUYHOUSES.COM for various real estate services, in International Classes 35 and 36, which generally cover advertising, promotion, and marketing of services such as investing, appraising, banking or credit unions, and real estate services that delve into finance (brokerage, listing, escrow, management).

28.     In an Official Action dated August 14, 2003, the PTO refused registration of the '672 Application based on descriptiveness, stating "the proposed mark merely describes the services." The PTO also listed several pending applications, including the '479 Application, as the basis for a potential likelihood of confusion refusal, if the proposed marks were to register.

29.     On February 23, 2004, Webuyhouses.com, Corp. filed its response to the Official Action and argued, among other things, that its mark is not descriptive and that the '479 Application had become abandoned and can no longer be the basis of a likelihood of confusion refusal.

30.     On June 29, 2004, the PTO (a) suspended Webuyhouses.com Corp.'s application pending the disposition of the '479 Application (which was not abandoned, as claimed by Webuyhouses.com, Corp.) and (b) reiterated the descriptiveness refusal.

The PTO explained:

> Since applicant's effective filing date is subsequent to the effective filing date of the above-identified ['479] application(s), the latter, if and when it registers, may be cited against this application.  See 37 C.F.R. §2.83....  Applicant's mark and the prior filed mark are legally identical.  The addition of .com does not have source significance.

Crucially, the PTO further explained:

> [t]he term **"we buy houses" is commonly used in the real estate industry to describe real estate services**.  As proof, the examining attorney attaches excerpts from www.google.com.  Additional evidence is needed to support the claim of distinctiveness.  The term Applicant's allegation of six years' use alone is insufficient evidence of distinctiveness in this case because applicant's mark is highly descriptive of the goods and/or services.  Applicant must establish acquired distinctiveness by a preponderance of the evidence.  This evidence may include specific dollar sales under the mark, advertising figures, samples of advertising, consumer or dealer statements of recognition of the mark, and any other evidence that establishes the distinctiveness of the mark as an indicator of source.  (Emphasis added)

31.     One month before the PTO issued the above-quoted explanation (May 26, 2004), WeBuyHouses.com, Corp. had purchased the '479 Application for the WE BUY HOUSES mark from Payette for $12,500.  A Record of Assignment was filed on June 14, 2004 at the PTO (Reel: 2991, Frame: 0907).  This purchase was an attempt on the part of WeBuyHouses.com, Corp. to overcome the likely refusal of its WEBUYHOUSES.COM mark on the basis of likelihood of confusion with the '479 Application.

32.     The Assignment reveals a "Sale of Business Assets, Assignment of U.S. Trademark & Application" agreement (hereinafter, the "Assignment Agreement") between Payette and Webuyhouses.com, Corp. which purports to memorialize the sale of the assets of "said business," which was described as:  "a sole proprietorship business that has adopted, used and is using the trademark 'WE BUY HOUSES' in connection with certain business activities, and has filed trademark applications…….Serial Nos. 78/073,479 and 78/073, 446 (the latter now abandoned)."  The assets of "said business" include, "only certain of the inventory of printed materials bearing

said trademark, copies of certain of the records of said business, and all goodwill of the said business and trademark, 'WE BUY HOUSES.'  This agreement assigns the '479 Application together with the good will of the business symbolized by the said trademark."

33.    The Assignment Agreement also includes a provision that states that "[i]t is expressly understood that such asset purchase shall not extend to other, discrete sole proprietorship businesses or divisions of Payette, including but not limited to Payette's business under the name and trademark 'I BUY HOUSES,' which shall be further defined as an excluded asset."

34.    The Assignment Agreement further purports to allow the WE BUY HOUSES mark to "coexist" with Payette's "I BUY HOUSES" mark:

> Payette and Assignee agree that the said business and trademark, "WE BUY HOUSES," may co-exist with Payette's other businesses and trademark, "I BUY HOUSES," as set forth in U.S. Trademark Application Serial No. 78/079,011, due to the difference between the marks, the channels of trade, the logo-designs utilized by the parties, and the personal nature of the goods and services.  In the unlikely event that the parties become aware of any instances of actual or potential confusion, they shall cooperate to further distinguish themselves by means other than modification of their respective trademarks.  In the event that either party requires the written consent of the other party to facilitate the allowance of a trademark application and/or registration for its mark, the other party shall cooperate with the requesting party at the requesting party's expense, including the execution of further documents, to accomplish the allowance in accordance with the spirit and intent of this agreement.  Moreover, neither party shall challenge the right of the other party to achieve allowance of any trademark application and/or issuance and maintenance of any trademark registration for its mark as contemplated herein.

35.    At the time of the Assignment Agreement, the WE BUY HOUSES mark had never been used in commerce, and no Statement of Use had ever been filed.  In fact, on June 14, 2004, the date the Record of Assignment was filed with the PTO, Webuyhouses.com, Corp. filed another Notice of Extension for the WE BUY HOUSES mark.  The Assignment Agreement was therefore improper under Trademark Act § 10(a)(1), rendering the application *void ab initio*.

36.     Nonetheless, Webuyhouses.com, Corp. claimed to have begun using the WE BUY HOUSES mark in commerce in 2005.  On December 2, 2005, Webuyhouses.com, Corp. filed a Statement of Use for the '479 Application, alleging a first use at least as early as October 21, 2005. The '479 Application was, however, abandoned between January 11, 2006 and March 24, 2006 because the Statement of Use failed to meet the relevant statutory requirements.

37.     On January 18, 2006, in light of the abandonment of the '479 Application, the PTO revoked the suspension of review for the '672 Application.  However, the PTO reiterated its prior refusal to register the WEBUYHOUSES.COM mark on the basis of descriptiveness under § 2(e)(1):

> The refusal to register applicant's mark under Trademark Act Section 2(e)(1) is maintained. ***The applicant's mark is highly descriptive of the applicant's services. The term "we buy houses" is commonly used in the real estate industry to describes real estate services***. . . . (Emphasis added.)

> Applicant must establish acquired distinctiveness by a preponderance of the evidence.  *Yamaha Int'l Corp. v. Hoshino Gakki Co*., 840 F.2d 1572, 6 USPQ2d 1001 (Fed. Cir. 1988).  This evidence may include specific dollar sales under the mark, advertising figures, samples of advertising, consumer or dealer statements of recognition of the mark, and any other evidence that establishes the distinctiveness of the mark as an indicator of source.  The Office will decide each case on its own merits.

38.     On July 20, 2006, in an attempt to demonstrate acquired distinctiveness of the purported WEBUYHOUSES.COM mark, Webuyhouses.com Corp. submitted an 82-page Amendment to its '672 Application that included evidence of sales amounts associated with the website from 2003 forward, as well as samples of advertisements from 2006, several consumer and dealer statements, and a declaration from the President of Webuyhouses.com, Corp.  However, the evidence that Webuyhouses.com Corp. submitted to the PTO was false and misleading because it did not accurately reflect or otherwise establish that the phrase "we buy houses" had acquired distinctiveness and/or that Webuyhouses.com Corp. was the source of those services.

39.    On August 17, 2006, following submission of the false and misleading Amendment, the PTO accepted Webuyhouses.com, Corp.'s false and misleading claim of acquired distinctiveness under 2(f) and withdrew the refusal to register on the basis of descriptiveness under Section 2(e)(1).

40.    The '479 Application for WE BUY HOUSES matured into U.S. Registration No. 3,149,336 ("the '336 Registration") on September 26, 2006.

41.    Less than a year later, on May 1, 2007, the '672 Application for WEBUYHOUSES.COM matured into U.S. Registration No. 3,235,523 ("the '523 Registration").

42.    In November 2012, Webuyhouses.com, Corp. assigned both the '336 Registration and the '523 Registration, along with all associated interest and goodwill, to X5 Ventures, LLC, a limited liability company owned, operated, and controlled by Defendant Brandt.  (Reel: 4918, Frame: 0217).

43.    In September 2016, Defendant Brandt filed a *nunc pro tunc* assignment, conveying the WE BUY HOUSES Marks to Defendant WBH, with an effective assignment date of September 10, 2013.  (Reel: 5881, Frame: 0959).  Defendant Brandt is also the founder and CEO of WBH.

**Fraud on the PTO:  WEBUYHOUSES.COM Mark**

44.    During its prosecution of the '672 Application for the WEBUYHOUSES.COM mark, Webuyhouses.com, Corp. made numerous fraudulent misrepresentations to the PTO, rendering the '523 Registration void *ab initio*.

45.    First, in the original '672 Application, Webuyhouses.com, Corp. represented that "the [WEBUYHOUSES.COM] trademark was first used anywhere at least as early as ***November 13, 1997***, was first used in interstate commerce at least as early as ***November 13, 1997***, and is now in use in such commerce" in connection with "real estate and investment services, namely

providing on-line information and referrals in the field of buying, financing, and selling real property; on-line advertising and listing services in the field of real estate." (Emphasis added.)

46.     This statement, which was made under penalty of perjury, was knowingly and intentionally false when made, and, furthermore, was made with the express intent to induce the PTO to register the WEBUYHOUSES.COM mark.  In fact, a search of the Internet Archive demonstrates that "webuyhouses.com" was not used as an active URL until several years later, in 2000:



Internet Archive, https://web.archive.org/web/*/webuyhouses.com (last visited June 22, 2017). Moreover, the phrase "webuyhouses.com" was used descriptively, and not as a trademark, until January 2003.

47.     Second, in response to the Trademark Office's August 14, 2004 Official Action, and in order to overcome the descriptiveness refusal, Howard Gordon, the President of Webuyhouses.com, Corp., claimed that the WEBUYHOUSES.COM trademark had acquired distinctiveness.  In support of such claim, Mr. Gordon filed a declaration, which was made under penalty of perjury, dated December 10, 2003, stating that "for more than six (6) years the Applicant has been selling goods and services under the mark "WEBUYHOUSES.COM" in the United

States" and that "the mark has become distinctive of the goods and services through the Applicant's substantially exclusive and continuous use in commerce of the mark for at least the five (5) years immediately before the date of this statement."

48.     This declaration was knowingly and intentionally false.  The declaration indicated that Webuyhouses.com, Corp. had been selling goods and/or services under the WEBUYHOUSES.COM mark since at least December 10, 1997, and that the mark was used exclusively and continuously in commerce since at least December 10, 1998.  But, as stated above, webuyhouses.com was not an active URL until 2000, and the phrase "webuyhouses.com" was used descriptively, and not as a trademark, until January 2003.

49.     Moreover, Webuyhouses.com Corp.'s use of the mark was not exclusive, as numerous companies and professionals in the real estate industry used the phrase "we buy houses" or indistinguishable variations thereof as trademarks and/or to describe their goods or services prior to and on the date of Mr. Gordon's declaration.  Below is a sampling of U.S. trademark registrations and applications for marks containing the phrase "we buy houses" or variations thereof with a claimed first use date prior to December 2003:

| Mark | Application/ Registration No. | Goods/Services | Date of First Use |
|---|---|---|---|
| IBUYHOUSES.COM | Application No. 85,896,690 | Class 36:  "real estate investment services in the nature of purchasing and selling of real estate for others" | December 19, 1996 |
| WE BUY HOUSES | Application No. 87,373,583 | Class 35:  "franchise services, namely, offering business management assistance in the establishment and operation of and marketing and development of franchised businesses that purchase, finance and sell residential real estate"  Class 36:  "real estate acquisition services; real estate brokerage; real estate financing services" | July 17, 1998 |

| WE BUY UGLY HOUSES | Registration No. 3,099,814 | Class 36: "real estate services, namely, real estate brokerage, and providing mortgage, title and home insurance brokerage services" | March 1, 2000 |
|---|---|---|---|
| WE BUY UGLY HOUSES AND MAKE THEM NICE AGAIN | Registration No. 2,827,136 | Class 35: "franchising services, namely, offering technical assistance in establishing, operating, marketing and developing franchised businesses that purchase, finance and sell residential real estate" | January 2002 |
| WE BUY HOUSES FLORIDA | Registration No. 5,034,469 | Class 36: "real estate investment services" | April 30, 2003 |

50.    Third, as alleged, Webuyhouses.com, Corp. improperly acquired the intent-to-use '479 Application for the purpose of overcoming a likelihood of confusion refusal, so that its WEBUYHOUSES.COM mark could be registered.

51.    Fourth, in response to the Trademark Office's 2(e) refusal dated January 18, 2006, Mr. Gordon submitted an additional declaration, dated June 16, 2006, in which he once again falsely alleged use of the WEBUYHOUSES.COM mark as early as 1997 or 1998 in yet another attempt to demonstrate acquired distinctiveness of the purported WEBUYHOUSES.COM mark.

52.    Fifth, in his final declaration before the '523 Registration issued, dated October 3, 2006, Mr. Gordon reiterated under penalty of perjury that the WEBUYHOUSES.COM mark was used continuously and in interstate commerce since as early as November 13, 1997. This was a knowing and intentional false statement submitted to the PTO.

53.    For all of the foregoing reasons, because the WEBUYHOUSES.COM Mark was procured through fraud on the PTO, with an intent to deceive, the mark is void and unenforceable.

**Failure to Enforce the WE BUY HOUSES Marks**

54.    Even though the Defendants have attempted to enforce their alleged rights in the phrase "we buy houses," neither they nor the prior owners have done so consistently. Instead, a parade of third parties, including those in the direct home buying market and more generally in the

real estate industry, have used and continue to use the phrase "we buy houses" and close variations thereof as either a trademark or a generic, affirmative statement of the services offered.

55.     Below is a sampling of recent U.S. Trademark applications or registrations that include the phrase "we buy houses" and close variations thereof for goods or services relating to real estate:

| Mark | Application/ Registration No. | Goods/Services | Date of First Use |
|---|---|---|---|
| WE BUY RAGGEDY HOUSES | Registration No. 3,469,400 | Class 36: "real estate investment for commercial and residential properties" | July 25, 2005 |
| WE BUY BROKE HOUSES | Registration No. 4,802,947 | Class 36: "arranging of leases and rental agreements for real estate; financial investment in the field of residential and commercial real estate; financing of real estate development projects; mortgage foreclosure mitigation and loan default mitigation services, namely, acquisition and lease-back of real estate" | March 18, 2009 |
| WE BUY HOUSES NATIONWIDE | Application No. 86,614,453 | Class 36: "assessment and management of real estate; commercial and residential real estate agency services; evaluation of real property; financial investment in the field of real estate; financing of real estate development projects; providing a database of information about residential real estate listings in different neighborhoods and communities" | January 1, 2011 |
| WE BUY HOUSES JUST THE WAY THEY ARE | Registration No. 4,568,099 | Class 36: "commercial and residential real estate agency services" | September 1, 2012 |
| WE BUY SAD HOUSES | Registration No. 4,602,637 | Class 36: "real estate investment for commercial and residential properties" | June 1, 2014 |
| WE BUY HOUSES IN A JIFFY | Application No. 87,240,899 | Class 36: "real estate acquisition services; real estate brokerage; real estate financing services" | June 1, 2016 |
| WE REALLY DO BUY HOUSES | Application No. 87,465,190 | Class 36: "real estate acquisition services" | January 1, 2017 |

56.     As a result of the long term, widespread use of the phrase "we buy houses" by companies and professionals in the real estate industry, the WE BUY HOUSES Marks do not

indicate any particular source, are generic, and therefore have been abandoned by Defendant WBH.

**Infringement Allegations and Removal of Plaintiff's YouTube Advertisements**

57.     Express Homebuyers, like many other home buying entities—including but not limited to those mentioned above—has, since 2003, used the generic phrase "we buy houses" in its advertising.  Indeed, "we buy houses" is nothing more an affirmative statement of the very services offered by Express Homebuyers:  buying houses.

58.     In July 2016, at the direction and instruction of Defendant Brandt, Defendant WBH filed multiple take-down requests with YouTube, alleging infringement of its WE BUY HOUSES Marks based on Express Homebuyers' use of the generic phrase "we buy houses" in 91 of its online advertisements.  Below is a sampling of the 91 Express Homebuyers online advertisements that were taken down as a result of the Defendants' wrongful and improper take-down requests:

- **We Buy Houses Virginia Beach VA - CALL 888.820.7711 - Sell My House Fast Virginia Beach Virginia:** http://www.youtube.com/watch?v=yQ4H94woWhs

- **We Buy Houses Norfolk VA - CALL 888.820.7711 - Sell My House Fast Norfolk Virginia:** http://www.youtube.com/watch?v=idqqJot5Avc

- **We Buy Houses Alexandria VA - CALL 888.820.7711 - Sell My House Fast Alexandria:** http://www.youtube.com/watch?v=7vWO0rdrrvc

- **We Buy Houses Virginia- CALL 888.820.7711 - Sell Your House Fast Virginia:** http://www.youtube.com/watch?v=qV0whSirfsU

- **We Buy Houses Seven Corners VA - CALL 888.820.7711 - Sell My House Fast Corners Virginia:** http://www.youtube.com/watch?v=cvw_AuhqEDI

- **We Buy Houses Pimmit Hills VA - CALL 888.820.7711 - Sell My House Fast Pimmit Hills Virginia:** http://www.youtube.com/watch?v=lPW1VpLieCM

- **We Buy Houses Falls Church VA - CALL 888.820.7711 - Sell My House Fast Falls Church Virginia:** http://www.youtube.com/watch?v=KSdXNlND2Oc

- **We Buy Houses Great Falls VA - CALL 888.820.7711 - Sell My House Fast Great Falls Virginia:** http://www.youtube.com/watch?v=3D5ArnM2Kfw

- **We Buy Houses Burke VA - CALL 888.820.7711 - Sell My House Fast Burke Virginia:** http://www.youtube.com/watch?v=XP7Epj9c3M8

- **We Buy Houses Centreville VA - CALL 888.820.7711 - Sell My House Fast Centreville Virginia:** http://www.youtube.com/watch?v=78LLcVKKJxA

- **We Buy Houses McLean VA - CALL 888.820.7711 - Sell My House Fast McLean Virginia:** http://www.youtube.com/watch?v=dVzOjaXkKmY

- **We Buy Houses Woodbridge VA - CALL 888.820.7711 - Sell My House Fast Woodbridge Virginia:** http://www.youtube.com/watch?v=K5Vm2EE3ZsU

- **We Buy Houses Herndon VA - CALL 888-820-7711 - Sell My House Fast Herndon Virginia:** http://www.youtube.com/watch?v=LcNsAJNcgSs

- **We Buy Houses Chantilly VA - CALL 888-820-7711 - Sell My House Fast Chantilly Virginia:** http://www.youtube.com/watch?v=B9mfBBmNVR8

- **We Buy Houses Manassas VA - CALL 888-820-7711 - Sell My House Fast Manassas Virginia:** http://www.youtube.com/watch?v=L24O9AJFzvg

- **We Buy Houses Leesburg VA - CALL 888.820.7711 - Sell My House Fast Leesburg Virginia:** http://www.youtube.com/watch?v=dTOisfJ46Fk

- **Avoid Foreclosure Woodbridge Virginia - We Buy Houses in 7 minutes - Express Homebuyers:** http://www.youtube.com/watch?v=URmFy_tXqkA

- **We Buy Houses Ashburn VA - CALL 888.820.7711 - Sell My House Fast Ashburn Virginia:** http://www.youtube.com/watch?v=cMbA_B9F_-Y

- **We Buy Houses Lorton VA - CALL 888.820.7711 - Sell My House Fast Lorton Virginia:** http://www.youtube.com/watch?v=9Oj7idRAW2E

- **We Buy Houses Richmond VA - CALL 888.820.7711 - Sell My House Fast Richmond Virginia:** http://www.youtube.com/watch?v=YFcC88qFPRg

- **We Buy Houses Fairfax VA - CALL 888.820.7711 - Sell My House Fast Fairfax Virginia:** http://www.youtube.com/watch?v=v6lPI8mxqrc

- **We Buy Houses Arlington VA - CALL 888.820.7711 - Sell My House Fast Arlington Virginia:** http://www.youtube.com/watch?v=KBT-TStFbV4

- **We Buy Houses Springfield VA - CALL 888.820.7711 - Sell My House Fast Springfield Virginia:** http://www.youtube.com/watch?v=gw9VV3--jJw

- **We Buy Houses Fredericksburg VA - CALL 888-820-7711- Sell My House Fast Fredericksburg:** http://www.youtube.com/watch?v=U-n0BW5X_po

- **We Buy Houses Reston VA - Call 888.820.7711 - Sell My House Fast Reston Virginia:** http://www.youtube.com/watch?v=ClFyBWOfnS0

- **We Buy Houses Vienna VA - CALL 888.820.7711 - Sell My House Fast Vienna Virginia:** http://www.youtube.com/watch?v=LXos6SwVsq4

- **We Buy Houses Stafford VA - CALL 888.820.7711 - Sell My House Fast Stafford Virginia:** http://www.youtube.com/watch?v=d4WfweAmEA0

- **We Buy Houses Annandale VA - CALL 888-820-7711 - Sell My House Fast Annandale Virginia:** http://www.youtube.com/watch?v=Ddb9q79zsuk

- **We Buy Houses Sterling VA - CALL 888.820.7711 - Sell My House Fast Sterling Virginia:** http://www.youtube.com/watch?v=eCLdZWah7Fk

59.     In response to Defendant WBH's complaints of infringement, YouTube removed all 91 videos from the website.  On information and belief, YouTube determined that Plaintiff Express Homebuyers' descriptive use of the phrase "we buy houses" was an infringing use simply by virtue of Defendant WBH's registrations of the WE BUY HOUSES Marks.  After the Defendants' wrongful actions, YouTube viewers receive the following message when attempting to watch Express Homebuyers' advertising videos:



YouTube.com, https://www.youtube.com/watch?v=DL2gm-42Spw (last visited June 23, 2017).

60.     As a result of its online advertisements being taken down at the direction of Defendants, Plaintiff Express Homebuyers' business has suffered losses, including, but not limited to:  damage to Plaintiff's brand, lost business, interruptions to its advertising campaign, and the lost costs of the advertisements themselves.

61. On May 17, 2017, Plaintiff Express Homebuyers filed Cancellation Proceeding No. 92,066,159 with the PTO for the WE BUY HOUSES mark on the basis of genericness. That action will be stayed pending the outcome of this litigation.

## CLAIMS FOR RELIEF

### COUNT ONE
### Declaratory Judgment as to the WE BUY HOUSES Mark
### (Against Defendant WBH)

62. Plaintiff incorporates Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. The question of whether Plaintiff Express Homebuyers infringed on Defendant WBH's purported trademark of the phrase "we buy houses" when it advertised its services in 91 online videos is real, substantial, and continues to affect the rights and business of Plaintiff.

64. An actual controversy exists between Defendant WBH and Plaintiff over Plaintiff's alleged infringement of the mark WE BUY HOUSES when Plaintiff advertised its services on YouTube.

65. Defendant WBH's purported WE BUY HOUSES mark is an informational statement of the exact goods covered in the '336 Registration, namely "real estate *pamphlets*, real estate *informational flyers*, real estate *informational sheets*, real estate *leaflets*, real estate *booklets*, real estate *informational letters*, real estate *newsletters*, *printed forms*, *printed guides* for real estate, *printed* instruction, educational, and teaching materials for real estate, *printed* paper signs, *printed* reports featuring real estate."

66. The phrase "we buy houses" is now, and has always been, understood by the real estate industry and the consuming public as a generic phrase referring to direct home buying transactions and/or direct home buying companies in general. As such, the phrase "we buy houses" is not understood by the consuming public to refer to Defendant WBH.

67.     As discussed above, the phrase "we buy houses" and close variations thereof have been used by numerous third parties for nearly two decades for informational purposes and/or to generically refer to real estate industry services and transactions. Neither Defendants nor any of the previous owners of the WE BUY HOUSES mark have consistently enforced their purported trademark rights in the mark, resulting in widespread and continuing use by competitors and real estate professionals.

68.     WE BUY HOUSES is not capable of distinguishing Defendants' goods or services pursuant to 15 U.S.C. § 1052 because it is a generic term for direct home buying transactions and/or direct home buying companies in general and because the invalid mark has been abandoned.

69.     Defendants' ownership and enforcement of a generic mark damages and interferes with Plaintiff Express Homebuyers' and other third parties' rights to make legitimate use of the phrase "we buy houses" and close variations thereof in connection with the real estate industry.

70.     Accordingly, by reason of the foregoing, Plaintiff Express Homebuyers is entitled to a declaration that the '336 Registration should be cancelled on the bases of fraud, genericness, and/or abandonment under Trademark Act § 14(3).

71.     Moreover, the Assignment of the intent-to-use '479 Application from Payette to WeBuyHouses.com (Reel: 2991, Frame: 0907) was obtained in violation of the Anti-Assignment provision of the Trademark Act § 10(a)(1) because the WE BUY HOUSES mark was not in use prior to or on the date of the assignment.

72.     Accordingly, Plaintiff Express Homebuyers is entitled to a declaration that: (a) the '336 Registration is void *ab initio* and all subsequent assignments of the '336 Registration— specifically, those between WeBuyHouses.com and X5 Ventures, and X5 Ventures and WBH— are null and void as well; (b) the '336 Registration is cancelled on the basis of violation of the

Anti-Assignment provision of the Trademark Act § 10(a)(1), and (c) that it did not infringe on Defendant WBH's mark WE BUY HOUSES.

## COUNT TWO
### Declaratory Judgment as to the WEBUYHOUSES.COM Mark
### (Against Defendant WBH)

73.     Plaintiff incorporates Paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     Like the purported WE BUY HOUSES mark, the purported WEBUYHOUSES.COM mark is an informational statement of the exact services in the '523 Registration, namely "real estate services, namely, referrals in the field of real estate procurement for others" and "real estate and investment services, namely providing on-line information in the field of real estate procurement for others."

75.     Plaintiff Express Homebuyers never referred to or otherwise used the phrase WEBUYHOUSES.COM in any one of the 91 online advertisements that Defendants wrongfully caused to be removed from YouTube.

76.     The question of whether Plaintiff Express Homebuyers infringed on Defendant WBH's purported trademark of WEBUYHOUSES.COM when it advertised its services in 91 online videos is real, substantial, and continues to affect the rights and business of Plaintiff.

77.     An actual controversy exists between Defendant WBH and Plaintiff over Plaintiff's alleged infringement of the mark WEBUYHOUSES.COM when Plaintiff advertised its services on YouTube.

78.     The phrase "we buy houses" is now, and has always been, understood by the real estate industry and the consuming public as a generic phrase referring to direct home buying transactions and/or direct home buying companies in general.  As such, the phrase "we buy houses" is not understood by the consuming public to refer to Defendant WBH.

79.     Adding .COM to the generic phrase "we buy houses" does not magically transform the generic phrase into a distinctive one.   WEBUYHOUSES.COM is indistinguishable, and therefore essentially conveys the same meaning as just "we buy houses."

80.     Neither Defendants nor any previous owners of the WEBUYHOUSES.COM Mark have consistently enforced their trademark rights in the purported mark, resulting in widespread and continuing use by competitors and customers and resulting in abandonment of any purported rights.

81.     WEBUYHOUSES.COM is not capable of distinguishing Defendants' goods or services pursuant to 15 U.S.C. § 1052 because it is a generic term for direct home buying transactions and/or direct home buying companies in general and because the mark has been abandoned due to failure to enforce, resulting in widespread third-party use.

82.     Defendants' claims to ownership of a generic mark damages and interferes with Plaintiff Express Homebuyers' and other third parties' rights to make legitimate use of the generic phrase "we buy houses" and close variations thereof in connection with buying houses.

83.     Accordingly, Plaintiff is entitled to a declaration that the '523 Registration should be cancelled on the basis of genericness and abandonment under Trademark Act § 14(3).

84.     Moreover, the multitude of false statements described above concerning, among other things, WEBUYHOUSES.COM's claimed first use and claimed continuous and exclusive use for more than five years before the Application's filing date, were knowingly and intentionally false and made with the intent to deceive the PTO for the purpose of obtaining trademark rights to which Webuyhouses.com, Corp., and now, Defendants, are not entitled.

85.     These false, material misrepresentations caused the PTO to allow the registration of the '523 Registration.  Accordingly, Plaintiff Express Homebuyers is entitled to a declaration that the '523 Registration was fraudulently obtained and should be cancelled.

86.     Finally, based on the foregoing, Plaintiff Express Homebuyers is entitled to a declaration that it did not infringe on Defendant WBH's mark WEBUYHOUSES.COM.

## COUNT THREE
### (Tortious Interference with Business Expectancy)
### (Against All Defendants)

87.     Plaintiff incorporates Paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.     Plaintiff created its online advertisements using the phrase "we buy houses" with the expectation that those advertisements would lead to increased business and revenues.

89.     Plaintiff's business/revenue expectation with respect to the use of "we buy houses" in its online advertising was valid because Plaintiff had been using the phrase on its website since 2004 and because Defendant WBH does not have, and never has had, enforceable federal trademark rights in the generic, ubiquitous phrase "we buy houses."

90.     Defendants at all times relevant herein were fully aware of Plaintiff's expectations with respect to its use of "we buy houses" in its YouTube advertising.

91.     Despite this knowledge, Defendant WBH intentionally interfered with Plaintiff's business/revenue expectancy by causing YouTube to take down 91 of Plaintiff's online advertisements that used the phrase "we buy houses."

92.     Defendant Brandt personally participated and directed Defendant WBH to take down 91of Plaintiff's online advertisements that used the phrase "we buy houses."

93.     As a proximate result of Defendants' actions, Plaintiff Express Homebuyers has been damaged in an amount to be proven at trial.

94.     At all times relevant herein, Defendants were aware, from their knowledge of existing circumstances and conditions, that their conduct in taking down 91 of Plaintiff's online advertisements would cause injury to Plaintiff.

95.     Defendants actions in taking down Plaintiff's online advertisements were taken in disregard of Plaintiff Express Homebuyer's rights, entitling Plaintiff to punitive damages in an amount to be proven at trial.

96.     Defendants actions in taking down Plaintiff's online advertisements were taken with reckless indifference to the consequences of their actions, entitling Plaintiff Express Homebuyers to punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Express Homebuyers prays as follows:

1.      Judgment against Defendant WBH on Counts 1-3 and against Defendant Brandt on Count 3;

2.      Judgment against Defendant WBH declaring that (a) the '336 Registration is canceled; (b) the '523 Registration is canceled; (c) Defendant WBH's purported WE BUY HOUSES and WEBUYHOUSES.COM marks are invalid and unenforceable; (d) Plaintiff Express Homebuyers has not infringed either purported mark; and, (e) Plaintiff Express Homebuyers is free to use either purported mark in its business;

3.      Judgment against Defendants for Plaintiff Express Homebuyers' reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a) as an exceptional case;

4.      Judgment against Defendant for punitive damages and other monetary damages;

5.      Judgment against Defendants for prejudgment interest and post-judgment interest; and

6.      Judgment against Defendants for all other and further relief, both at law and in equity, to which Plaintiff Express Homebuyers may show itself to be justly entitled.

## DEMAND FOR A JURY TRIAL

Plaintiff Express Homebuyers demands a jury trial on all issues so triable.

Dated:  June 28, 2017                    Respectfully submitted,

*/s/    Joseph J. Aronica*
DUANE MORRIS LLP
Joseph J. Aronica (VSB No. 02548)
505 9th Street, N.W., Suite 1000
Washington, D.C. 20004
Phone:  (202) 776-7824
Fax:  (202) 478-1885
Email:  jjaronica@duanemorris.com

*Attorney for Plaintiff Express Homebuyers
USA, LLC*

**Of Counsel for Plaintiff Express Homebuyers USA, LLC**:

Ugo Colella (*pro hac vice* application forthcoming)
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, D.C. 20004
Phone:  (202) 776-5219
Fax:  (202) 315-3423
Email: ucolella@duanemorris.com

Nicole K. McLaughlin (*pro hac vice* application forthcoming)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103-4196
Phone:  (215) 979-1191
Fax:  (215) 689-4934
Email:  nkmclaughlin@duanemorris.com

John J. Zefutie, Jr. (*pro hac vice* application forthcoming)
DUANE MORRIS LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, New Jersey 07102-5429
Phone:  (973) 424-2039
Fax:  (973) 556-1499
Email:  jjzefutie@duanemorris.com