THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EXPRESS HOMEBUYERS USA, LLC, )
    Plaintiff, )
 ) Case No. 1:17-cv-736
v. )
 )
WBH MARKETING INC., )
    Defendant. )

## MEMORANDUM OPINION

Plaintiff, a Virginia limited liability company engaged in the business of buying and selling houses, brings this action against defendant, a Texas corporation engaged in the same business, seeking cancellation of defendant's two trademarks, "We Buy Houses" and "Webuyhouses.com" ("the Marks"), on the grounds that both marks are generic and undeserving of trademark protection. In response, defendant has counter-claimed that plaintiff has infringed on the Marks and falsely designated the origin of plaintiff's services. Both parties have moved for summary judgment on plaintiff's claim and defendant's counterclaims. This memorandum opinion addresses whether the Marks are generic, and therefore ineligible for trademark protection.[1] Because there are no disputed issues of material fact with respect to this question, plaintiff's motion for summary judgment must be granted in part and defendant's cross-motion for summary judgment must be denied in part.

---

[1] The parties' cross-motions for summary judgment and plaintiff's pending motion to dismiss address defendant's remaining counterclaims, which do not implicate the question whether the Marks are generic. Those will be addressed and resolved by a separate order.

1

# I.

Given that summary judgment is appropriate only where there are no genuine disputes of material fact, Fed. R. Civ. P. 56, the first step in the analysis is to identify the record facts as to which no genuine dispute exists. In this regard, Local Rule 56(B) directs a movant for summary judgment to include in its submission a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. The nonmovant must then respond to each numbered paragraph, either admitting or contesting the putative undisputed fact and citing admissible record evidence to establish a genuine dispute of material fact. The nonmovant's failure to respond to a fact listed by the movant constitutes an admission that the fact is undisputed. R. 16(B) Scheduling Order ¶ 13. Where, as here, both parties have moved for summary judgment, each party submitted its own statement of material facts as to which that party contends there is no genuine dispute. In this case, both parties have complied with the order and local rule. Accordingly, the facts recited here are derived from the parties' lists of material facts and their respective responses.

- Plaintiff Express Homebuyers (EHB) is a limited liability company organized under Virginia law with its principal place of business in Springfield, VA. EHB has been in the house-buying industry since 2003, operating chiefly in the Washington, D.C. metropolitan area. Lawrence Bradford Chandler is EHB's CEO.

- Defendant We Buy Houses Inc. (WBH) is a Texas corporation with its principal place of business in Southlake, TX. WBH provides educational and instructional materials to home buyers and sellers and conducts its operations nationwide. Jeremy Brandt is a citizen of Texas and is WBH's founder and CEO.

- WBH owns the two registered marks at issue: "We Buy Houses" and "Webuyhouses.com."

- On July 11, 2001, Michael Payette filed an intent-to-use Application No. 78,073,479 (the '479 Application) with the U.S. Patent and Trademark Office (PTO) for the mark "WE BUY HOUSES" for real estate printed materials.

- In February 2003, while Payette's '479 Application was still pending, Webuyhouses.com, Corp., owned by Howard Gordon, filed Application No. 76,491,672 (the '672 Application) to register the mark "WEBUYHOUSES.COM."

- On May 26, 2004, Payette sold the '479 Application for the WE BUY HOUSES mark to Webuyhouses.com, Corp. The transaction was documented in a sale and assignment agreement, which was recorded with the PTO on June 14, 2004. On December 2, 2005, Webuyhouses.com, Corp. filed a Statement of Use for the '479 Application for WE BUY HOUSES, alleging first use as early as October 21, 2005.

- In March 2006, Webuyhouses.com, Corp. entered a license agreement with Martin Price, whereby Price operated, advertised, and marketed "webuyhouses.com" and "we buy houses" as Gordon's business partner.

- The '479 Application for WE BUY HOUSES became U.S. Registration No. 3,149,336 (the '336 Registration), and the '672 Application for WEBUYHOUSES.COM became U.S. Registration No. 3,235,523 (the '523 Registration) on September 26, 2006 and May 1, 2007, respectively.

- Gordon acquired the Marks to prevent others from barring his companies' use of the phrase "we buy houses." Price had the same view. Between 1997 and November 2012, neither Gordon nor Price enforced the Marks even though both were aware of the widespread use of the phrase "we buy houses" in the real estate industry. Gordon and Price actively encouraged other house-buying companies—many of which had names containing the phrase "We Buy Houses"—to use the phrase "we buy houses," believing that increased use of the phrase would create more traffic to the WEBUYHOUSES.COM website. CD, Ex. 17, 79; Price Dep. at 169, 174-75, 187-88; Gordon Dep. at 253.

- Between 1997 and November 2012, Gordon and Price advertised and marketed the Marks in a non-source-identifying manner, saying that "we buy houses" "doesn't signify who you are. It signifies what you do." Price Dep. at 18:5-8; *see also* Gordon Dep. at 218-19 ("I call [WE BUY HOUSES] 'the three magic words,' which is why we patented and then trademarked them, because they are recognized by everybody as what we do."). Price understood that the phrase "We Buy Houses" was being used on 10-50 million websites, and he leveraged the widespread use of "we buy houses" to make money by selling leads from the WEBUYHOUSES.COM website to house-buyers. Price marketed the website WEBUYHOUSES.COM to other house-buyers whose companies had "We Buy Houses" in their name or whose companies were otherwise in the house-buying business.

- In November 2012, Webuyhouses.com, Corp. assigned the '336 Registration and the '523 Registration to X5, a company owned by Brandt that did business in the house-buying industry. X5 was aware at that time that other house-buying companies were using the phrase "we buy houses."

- X5 subsequently assigned the rights in both Marks to We Buy Houses Inc., effective September 10, 2013.

3

- The prior and current owners of the WBH Marks have used "we buy houses" to indicate the nature or class of services offered, namely that they buy houses from consumers looking to sell their homes. Prior to purchasing the WBH mark in 2012, Brandt's previous companies X5 and Cash Offer Corporation (COC) used the phrase "we buy houses" to indicate the nature or class of service they offered.

- Real estate investors who buy houses are commonly referred to in the industry as "we buy houses companies," and consumers share that understanding due to the ubiquity of "we buy houses" road signs. EHB's competitors also use the "we buy houses" phrase to signal to customers that they are involved in the home-buying market.

- Real estate professionals have used "we buy houses" in newspaper advertising since 1898. CD, Ex. 124; Appx. 3; Arnold Decl. ¶3.[2] A May 2016 search on www.newspapers.com of "WE BUY HOUSES" produces 52,295,853 results. CD Ex. 19. A Google search of "we buy houses" yields hundreds of thousands of pages of results.[3] Numerous real estate professionals use "we buy houses" in online marketing and advertising. Appx. 1. Numerous Trademark applications and registrations include the phrase "We Buy Houses," and several books include the phrase in the title or otherwise to discuss the house-buying business. CD Ex. 18; Arnold Decl.

- EBH uses the phrase "we buy houses" in marketing and advertising, but it has never used the phrase "webuyhouses.com." Between 2003 and 2016, EHB received no complaints

---

[2] WBH argues that this evidence from newspapers is unauthenticated and hence not properly admissible here. This argument fails. Rule 902(b)(6), Fed. R. Evid., provides that such newspaper evidence is self-authenticating and therefore admissible. *See Bailey v. Black Entm't Televisions*, 2010 WL 1780403, at *3 (E.D. Va. May 3, 2010). A number of other exhibits supporting this fact were authenticated by Robert Arnold. *See* Ex. 18, 19, and 124. Accordingly, this evidence is admissible and undisputed.

[3] WBH argues that evidence from the Internet, including Google search results and other evidence relating to the use of "we buy houses" is unauthenticated and inadmissible. This argument also fails as Rule 901(b)(4), Fed. R. Evid., permits authentication by circumstantial evidence including "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." And courts have recognized that this rule allows for authentication of the contents of websites. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534 (D. Md. 2007). In addition, a number of documents in the record are taken directly from the PTO's website, which may be judicially noticed. *Advantek Marketing, Inc. v. Shanghai Walk-Long Tools Co.*, 2016 WL 9178079, at *1 (C.D. Cal. Nov. 3, 2016); *see also Genetic Technologies Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014) ("A court may also take judicial notice of the prosecution histories, which are 'public records.'") (citing *Hockerson–Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)).

Finally, with respect to the hearsay objection to the Internet evidence, WBH's argument is misplaced. The Internet evidence is not being offered for the truth of the matter asserted, namely that the companies advertising home-buying services in fact buy houses. Rather, the evidence is submitted to establish that many third parties currently use and have used the "we buy houses" phrase for decades to describe their house-buying services, not to identify a source of the services. *See SMS Audio LLC v. Belson*, 2017 WL 1533971, at *4 (S.D Fla. Mar. 20, 2017) ("a webpage, introduced for the purpose of showing the information available on the Internet on a particular day, is not hearsay."); *Lorraine*, 241 F.R.D. at 566 ("When analyzing the admissibility of electronically generated evidence, courts also have held that statements contained within such evidence fall outside the hearsay definition if offered for a purpose other than their substantive truth.").

that its use of "we buy houses" was inappropriate, infringed on intellectual property, or otherwise confused customers.

- WBH directed real estate investors to remove the words "we buy houses" from Facebook, websites, blogs, Twitter, YouTube, and other marketing. CD, Ex. 122. WBH requested that YouTube remove EHB's marketing and advertising videos featuring the words "we buy houses." WBH told real estate investors that by using "we buy houses," they were attempting to confuse consumers and imitate WBH. *Id.* WBH told real estate investors that use of "we buy houses" in marketing content was trademark infringement. Brandt told WBH executive Dev Horn, "That's how we roll. Facebook page – GONE." *Id.* Ex 120. Horn further stated that WBH needed to "scare the sh*t" out of investors using "we buy houses" and that WBH should "GET THOSE MOTHER F*****S."

- Real estate investors informed WBH of the time and money it would take to remove "we buy houses" from their marketing, and that WBH's actions disrupted businesses.

## II.

The summary judgment standard, which the parties do not dispute, is too well-settled to merit extended discussion. As Rule 56, Fed. R. Civ. P., makes clear, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." And it is settled that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On the other hand, if the record reflects a genuine factual dispute, summary judgment is precluded. A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But importantly, the party opposing summary judgment may not rest upon mere allegations and denials, and must instead "set forth specific facts showing that there is a genuine issue for trial." *Id.* And further, these specific facts must be shown to exist in the record in legally admissible form. Finally, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

## III.

The Lanham Act permits a party to file a petition to cancel the registration of a mark at any time if, *inter alia*, "the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered." 15 U.S.C. § 1064. The Act further provides that a court may order the cancellation of the registration of a mark on the basis of such a petition. *Id.* § 1119.

Here, plaintiff seeks invalidation of defendant's Marks because the Marks are or have become generic. The Fourth Circuit has explained that a mark "cannot acquire trademark protections unless the mark is distinctive, that is, unless it serves the traditional functions of 'distinguishing the applicant's goods from those of others' and identifying the source of the goods." *Retail Servs., Inc. v. Freebies Publishing*, 364 F.3d 535, 538 (4th Cir. 2004) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). As the Fourth Circuit further noted, the "antithesis" of a distinctive mark is "a 'generic' mark which merely employs 'the common name of a product or service . . . .'" *Id.* (quoting *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir.1996)). A mark becomes generic where "the primary significance of the mark [is] its indication of the nature or class of the product or service, rather than [its] indication of source." *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996). Generic marks cannot be protected as trademarks because generic marks do not signify the source of the services provided and do not distinguish the particular product from other similar products in the market. *Retail Servs.*, 364 F.3d at 538 (citing *Two Pesos*, 505 U.S. at 768). The purpose behind requiring a trademark to be distinctive is that "if a business were permitted to appropriate a generic word as its trademark, it would be 'difficult for competitors to market their own brands of the same product.'" *Id.* (citing *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir.1986)).

6

Where, as here, a mark has been registered by the PTO, the fact of registration is *prima facie* evidence that the registered mark is not generic. *See* 15 U.S.C. § 1115(a). As the Fourth Circuit has explained, "[b]ecause the PTO may not register a generic mark, the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection." *Retail Servs.*, 364 F.3d at 542. This presumption of validity "require[s] the party challenging the mark to produce sufficient evidence to establish that the mark is generic by a preponderance of the evidence." *Id.* (citing *Glover*, 74 F.3d at 59). If the party challenging the registration presents sufficient evidence that the marks are generic, then the presumption of validity of the trademark is rebutted. *Id.* In some circumstances, the existence of a certificate of registration may be sufficient to create a question of material fact as to whether a mark is generic. Importantly, however, "the certificate of registration alone does not immunize" a registration from summary judgment, and sufficient evidence that the mark is generic will justify the award of summary judgment in favor of a party seeking cancellation of a mark. *Id.* at 544.

To rebut the presumption that WBH's Marks are not generic, EHB must offer proof that "the primary significance of the mark [is] its indication of the nature or class of the product or service, rather than an indication of source." *Glover*, 74 F.3d at 59. Furthermore, the evidence must demonstrate this generic understanding of the mark from the viewpoint of the "relevant public." *Retail Servs.*, 364 F.3d at 544. The Fourth Circuit has cited a number of sources of evidence in deciding whether the presumption of validity is rebutted, including "'purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications.'" *Id.* (quoting *Glover*, 74 F.3d at 59). Other sources include "evidence of 'generic use by competitors, generic use of the term by the mark's owners, and use of the term by third

parties in trademark registrations.'" *Id.* (quoting *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 406 (6th Cir. 2002)).

With these principles in mind, analysis now turns to the Marks in question—"we buy houses" and "webuyhouses.com." The parties do not dispute that the relevant consuming public in this case is home-selling consumers and house-buying professionals or investors. Therefore, the question is whether the phrase "We Buy Houses" is generic or distinctive from the viewpoint of this relevant public.

The use of the Marks on other websites and in newspapers by third parties to describe the services offered and not the source of the services is compelling evidence that the phrase "we buy houses" is generic.[4] *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 545 (considering the use of the term at issue by other websites on the Internet, including the descriptions offered for those sites). Here, there is substantial evidence that the phrase "we buy houses" is used extensively on the Internet and in newspapers to connote a class of services provided, rather than a specific source of those services. A search of newspapers.com, which aggregates uses of various phrases in newspapers and newspaper advertisements yields more than 55 million matches for the phrase "we buy houses," showing that the phrase is used extensively by third parties as a descriptor of services, not as an indicator of the source of the services. CD, Ex. 19. And a Google search of "we buy houses" yields hundreds of thousands of websites using the phrase, which shows, again, that third parties extensively use the phrase to market real estate services and not to identify the source of the services. Although some number of these results use the phrase in connection with WBH's

---

[4] WBH argues that this evidence is problematic because EHB has unclean hands. Specifically, WBH argues that because EHB has encouraged residential real estate investors to use the term in their advertising, it has caused this third-party use. But much of the evidence EHB submitted occurred far before EHB began its advertising campaign. Indeed, newspaper articles referring to "we buy houses" span as far back as 1898.

8

business, it is clear that the phrase is used extensively by a variety of other businesses to describe the class of services that they provide and not to identify the source of the services.

Significantly, the Fourth Circuit has held in similar cases that such extensive third-party use of a phrase or term is persuasive evidence that a phrase or word is generic, rather than distinctive. *See Retail Servs.*, 354 F.3d at 546 (holding that online search evidence of pervasive third-party use of the term "freebies" was persuasive evidence that the term is generic); *Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 818-19 (4th Cir. 2001) (evidence of extensive and uninterrupted use of the phrase "You Have Mail" supported finding that the phrase is generic). This undisputed record evidence of widespread, generic use of the Marks is compelling and convincing evidence that the phrase "we buy houses" is generic.

Defendant argues that in spite of the substantial evidence that the relevant consuming public uses the phrase generically, the Marks should be protected because they have become distinctive through secondary meaning. To acquire secondary meaning, "in the minds of the public, the primary significance" of the otherwise generic term must be "to identify the source of the product rather than the product itself." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). But the record in this case is devoid of any evidence to support this argument. Defendant merely points to the uncorroborated assertion by its CEO, Brandt, that "[w]hen people hear the phrase 'we buy houses,' they think of our company."[5] Aff. Brandt ¶ 18. Such sparse and

---

[5] Elsewhere in the record, Brandt also asserts, without corroboration, that "Multiple times a week potential home sellers have contacted WBH and expressed confusion because they had been in contact or had a negative experience with another company (possibly EHB) that called itself 'We Buy Houses' and believed that this company was WBH. WBH's licensees have also reported similar confusion . . . ." This statement need not be considered because "[e]vidence establishing a likelihood of confusion simply 'do[es] not bear upon the question of whether [a] trademark . . . [is] generic.'" *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 547 (4th Cir. 2004) (quoting *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144–45 (4th Cir.2000).

Defendant also argues that the addition of ".com" to one of its Marks gives it Internet-related distinctiveness. However, the mere addition of ".com" to an otherwise generic mark does not give it source-signifying distinctiveness, especially where, as here, the mark is used in the website addresses of other retailers that provide the

9

self-serving evidence is insufficient to create a genuine dispute concerning whether the Marks have acquired secondary meaning in the face of plaintiff's overwhelming and undisputed evidence that third parties use and understand the Marks generically, i.e. as describing a service and not a source. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient."). *See also Retail Servs., Inc.*, 364 F.3d at 547 ("Evidence of an acquired secondary meaning, however, has no relevance unless the mark in question has been found not to be generic.").

The Fourth Circuit has also made clear that "evidence of the owner's generic use, in particular, 'is strong evidence of genericness.'" *Retail Servs., Inc.*, 364 F.3d at 545 (quoting 2 McCarthy at § 12.13). Here, the undisputed evidence shows that the previous owners of the Marks used "we buy houses" as a generic description of the services they offered, not to identify the source of the services. For example, Gordon stated that he acquired the Marks so others could not prevent him and his companies from using the "we buy houses" phrase to describe their services. Gordon Dep. 136-40. Similarly, Price stated that he "didn't care if other people were using [the Marks] or not," Price Dep. 139:10-11, and explained that he "could have cared less about the trademark[.]" *Id.* at 212:13-14. Between 1997 and November 2012, Price advertised and marketed the "we buy houses" Marks in a non-source identifying manner, using the Marks to "signif[y] what you do." *Id.* at 168:5-8 (Price testified that "[We Buy Houses] doesn't signify who you are. It signifies what you do."). *See also id.* at 167, 180 (advertising and marketing WEBUYHOUSES.COM as the "most powerful name in the house-buying business"). Gordon

---

same service as the mark owner. *See In re 1800Mattresses.com*, 586 F.3d 1359, 1363-64 (Fed. Cir. 2009); *In re Hotels.com*, 573 F.3d 1300, 1306 (Fed. Cir. 2009). Here, the record contains substantial evidence of other house-buying companies that have website addresses similar to "webuyhouses.com." Br. in Supp. of Pl. Countercl. Def's Mot. For Summ. J., Appx. 1.

10

described the Marks in the same manner, stating that "we buy houses" was recognized as an indication of "what we do" and not as the source of the house-buying services provided. Gordon Dep. at 218-19. In other words, the prior owners of the Marks used "we buy houses" to refer to the real estate purchasing services that they and their licensees provided. The Fourth Circuit has made clear that the mark owner's own use of a trademarked phrase to refer to the nature or class of services to which the mark applies is strong evidence that the Marks are generic. *Retail Servs., Inc.*, 364 F.3d at 545; *Am. Online, Inc.*, 243 F.3d at 819-20.

Finally, the record contains evidence from competitors on their generic use of the phrase "we buy houses." Nor is there doubt that this is relevant evidence. *See Retail Servs., Inc.*, 364 F.3d at 546 (considering declarations from competitors on the use of the mark at issue). The record discloses that numerous real estate professionals use "we buy houses" in online marketing and advertising to describe the house-buying service they provide and not to the source of the service. Appx. 1. ("We buy houses in ANY CONDITION! We pay CASH and you will not pay any commissions, agents, or fees."). Chandler testified that he uses the phrase "we buy houses" to refer to the home-buying services that EHB provides—that is, to "tell the consumer what it is that [EHB] do[es]." EHB Dep. 227:3-4. And there is also significant evidence that the "we buy houses" label identifies "real estate investors who buy houses" as a category of a type of service-provider and not to identify any particular provider as a source of those services. *See id.* at 201:1-8. ("[I]n this industry ... real estate investors are often ... referred to as 'we buy houses' companies.... So the market thinks that anyone who invests in houses is, quote, one of those 'we buy houses' companies."). *See also* Appx. 1; Exs. 27, 29-39, 41-43, 46-48, 50, 75, 88-89, 123. This use of the phrase "we buy houses" by competitors and consumers to refer to a type of service provided, not to a source of the service, further confirms that the phrase is generic.

In sum, this undisputed record evidence more than rebuts the presumption stemming from the PTO's determination that the Marks are not generic. *See Retail Servs., Inc.* 364 F.3d at 546 ("Such one-sided evidence necessarily rebuts the presumption of non-genericness."). The overwhelming and unrefuted evidence in this case shows that there is no genuine dispute of material fact as to the determination that the Marks at issue are generic, and accordingly, summary judgment cancelling the marks is appropriate. This result is logical; when asked what services they provide, EHB, WBH, and other competitors would naturally answer "we buy houses." And allowing one member of the industry to trademark the phrase "we buy houses" would be the equivalent of allowing a professional football team to trademark "we play football" or a fast-food chain to trademark "we sell burgers." Those phrases are not distinctive identifiers of a source of goods or services. They merely describe the kind of services or goods provided by a business, and accordingly those phrases cannot be trademarked. The same is true of "we buy houses."

Seeking to avoid this conclusion, WBH argues that even if the phrase "we buy houses" is generic, defendants are not using the phrase generically with respect to their business, which Brandt describes as "provid[ing] educational and instructional materials to home buyers and sellers." Brandt Decl. ¶ 13. In essence, defendants argue that the fact that they connect their network of real estate investors to sellers to purchase homes and do not themselves buy homes transforms the use of "We Buy Houses" from generic to descriptive.

The Fourth Circuit considered and rejected a similar argument in *Retail Services*. There, the defendants contended that their use of the term "freebies" was descriptive because they provided "information about no-cost or low cost promotional offers" as opposed to the generic use of the term which connoted the giving away of products for free. *Retail Servs.*, at 547. The Fourth Circuit concluded that this "razor-thin distinction" was "not significant" because "[e]ven though

12

defendants do not directly distribute free products or 'freebies,' their business nonetheless revolves around 'freebies' in the generic sense of the word." *Id.* This is so, according to the Fourth Circuit, because defendants' business involved connecting consumers with free offers. *Id.* Similarly here, although defendant may not be directly buying houses, defendant's business nonetheless "revolves around" the use of the "we buy houses" phrase in a generic sense, namely connecting home sellers to home buyers.[6]

In sum, the undisputed record confirms that the Marks at issue describe defendant's services but do not identify the source of the services. As such, the Marks are generic.

## IV.

EHB also seeks summary judgment with respect to WBH's counterclaims. This memorandum opinion addresses only the counterclaims that implicate the validity of the Marks and turn on the determination that the Marks are generic. Specifically, WBH has counterclaimed that EHB is liable for trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114(1), and Virginia common law, and that EHB is liable for false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

Under the Lanham Act, both trademark infringement and false designation of origin claims require a trademark holder to prove (1) that it possesses a valid, protectable mark; (2) that the opposing party used the mark; (3) that the opposing party's use of the mark occurred in commerce; (4) that the opposing party used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the opposing party used the mark in a manner likely to confuse consumers. *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005); *Lone Star*

---

[6] EHB also argues that the Marks at issue in this case were abandoned by WBH or otherwise improperly assigned. Because the Marks are generic, that issue need not be addressed or decided here.

13

*Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995) ("[C]omplainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers."). The same test is applied under Virginia common law. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014).

Here, defendant's Marks are generic and thus neither valid nor protectable. 15 U.S.C. § 1064(3). Therefore, defendant's counterclaims based on trademark infringement and false origin fail as a matter of law, and summary judgment should be granted in favor of plaintiff on Counts I, II, and IV of defendant's First Amended Counterclaims.

## V.

For the reasons discussed above, plaintiff's motion for summary judgment must be granted in part, and defendant's motion for summary judgment must be denied in part. Specifically, plaintiff's motion for summary judgment must be granted as to Counts I and II of the First Amended Complaint, which seek a judgment declaring that the Marks must be canceled because they are generic. Defendant's motion for summary judgment must be denied insofar as it seeks dismissal of those Counts. Plaintiff's motion for summary judgment must also be granted as to Counts I, II and IV of defendant's First Amended Counterclaims, as those Counts depend on the validity of the Marks. Defendant's motion for summary judgment must be denied insofar as it seeks judgment in its favor on Counts I, II and IV.

An appropriate order will issue.

_____
/s/
T. S. Ellis, III
United States District Judge