**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

EXPRESS HOMEBUYERS USA, LLC,
*Plaintiff,*

v.                                                       Case No. 1:17-cv-00736-TSE-IDD

WBH MARKETING, INC.,
*Defendant.*

WBH MARKETING, INC.,
*Counterclaim Plaintiff,*

v.

EXPRESS HOMEBUYERS USA, LLC and
LAWRENCE BRADFORD CHANDLER, III,
*Counterclaim Defendants.*


## WBH MARKETING, INC.'S MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

### INTRODUCTION

Defendant/Counterclaim Plaintiff WBH Marketing, Inc. ("WBH") understands that

motions for reconsideration are disfavored.  In this instance, however, the Court's August 15,

2018 Memorandum Opinion and Order (Docket Nos. 121, 122) contain several factual and legal

errors that the Court should consider and address in an amended opinion.  Under Fed. R. Civ. P.

60(a), "[t]he court may correct a mistake arising from oversight or omission whenever one is

found in a judgment, order, or other part of the record."  Under Fed. R. Civ. P. 60(b), "the court

may relieve a party or its legal representative from a final judgment, order, or proceeding" for

"mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief."

As explained below, the Court should grant this relief and issue an amended opinion that more

accurately presents the parties' evidence and controlling trademark law at issue.

1

## ARGUMENT

**I.     The Court Mistakenly Found As Undisputed That Professional Home Buyers Are Known As "We Buy Houses Companies."**

The Court mistakenly found the most important and most contested factual contention in this case to be undisputed and proven.  Accepting the contention of Express Homebuyers USA, LLC ("EHB"), the Court found that "[r]eal estate investors who buy houses are commonly referred to in the industry as 'we buy houses companies,' and consumers share that understanding due to the ubiquity of 'we buy houses' road signs."  Op. at 4.  This finding effectively established all EHB needed in order to prevail on its genericness claim.  Yet EHB offered no consumer perception survey evidence, offered no industry expert opinion testimony, and ignored the evidence establishing the nationwide commercial success of WBH and its "WE BUY HOUSES" and "webuyhouses.com" brand.[1]  All EHB offered for its contention was its President Lawrence Bradford Chandler's self-serving testimony (*see id.* at 11) together with copies of road signs and Internet search results.

The Court should have found that EHB's contention was in dispute because WBH emphasized that residential real estate investors are not commonly referred to in the industry as "we buy houses companies" and because WBH emphasized that WBH and its brand are well known.  *See* Docket No. 93 (WBH's Opposition to EHB's Motion for Summary Judgment) ("WBH's Opp'n") at 1 (WBH's Response to EHB's Statement of Facts); Docket No. 100 ("WBH's Reply") at 2-3.  In response to EHB's contention, WBH previously explained:

- Where the parties disagree is on EHB's contention that "WE BUY HOUSES" is the common name for the type of company that WBH and EHB operate or the type of services they provide.
- The common name for companies like EHB or WBH might be "residential real estate investors," "home lead generators, "home buyers," "house buyers," "house

---

[1]     On pages 2 and 3, the Court's opinion mistakenly refers to WBH as "We Buy Houses Inc."

> flippers," or "house buyers, renovators and sellers." But EHB cannot show that it is "WE BUY HOUSES."
> - "WE BUY HOUSES" is not generic for residential real estate investor companies or the common commercial name for the services offered.
> - A law firm is not called a "we provide legal advice" type of company. A carpet cleaning business is not called a "we clean carpets" type of company. A florist is not called a "we sell flowers" type of company. A junkyard is not called a "we collect junk" type of company.
> - The combination of a personal pronoun, a verb, and an object are creative and make "WE BUY HOUSES" unique as a company name.
> - WBH has steadily strengthened the WE BUY HOUSES® brand and goodwill, with WBH and its licensees extensively using WE BUY HOUSES® across all advertising channels over several years.

WBH's Reply at 3. WBH further explained how, over several years, WBH, WBH's network of 61 licensees, and their approximately 200 employees in nearly every major residential housing market in the country have extensively promoted WBH's "WE BUY HOUSES" and "webuyhouses.com" brand through "digital banner display ads, billboards, flyers, holiday cards, car wraps, educational and marketing materials, employee clothing, door hanger, direct mail, and yard signs, as well as its own website and domain names." Declaration of Jeremy Brandt (Docket No. 82-1) ("Brandt Decl.") ¶¶ 12, 14, 15, 18; Supplemental Declaration of Jeremy Brandt (Docket No. 91-2) ("Brandt Suppl. Decl.") ¶¶ 4-6. EHB offered nothing to address or dispute the evidence that WBH's brand is well known.

The Court should have recognized this factual dispute and not credited EHB's self-serving testimony and third-party use of "we buy houses" to conclude that "WE BUY HOUSES" and "webuyhouses.com" generically identify residential real estate investors and do not identify WBH. If this were enough to cancel incontestable trademark registrations, the Realtor®, Band-Aid®, ChapStick®, Jacuzzi®, Jeep®, La-Z-Boy®, Post-it®, Vaseline®, Xerox®, and Ziploc® trademark registrations would have been cancelled by infringers long ago. However, an infringer's self-serving testimony and evidence of third-party use of a mark is not enough to

3

cancel an incontestable trademark registration, especially on summary judgment where the evidence is contested.  Because the Court mistakenly found as undisputed and proven the most important and most contested factual contention in this case, WBH respectfully requests that the Court issue an amended opinion that explains that WBH does dispute that "[r]eal estate investors who buy houses are commonly referred to in the industry as 'we buy houses companies,' and consumers share that understanding due to the ubiquity of 'we buy houses' road signs."

## II.    The Court Mistakenly Relied On EHB's Unreliable And Grossly Inaccurate Newspapers.com And Google Search Results.

In its opinion, the Court extensively credited EHB's Internet search results evidence.  The Court found that "[a] May 2016 search on www.newspapers.com of 'WE BUY HOUSES' produces 52,295,853 results" and "[a] Google search of 'we buy houses' yields hundreds of thousands of pages of results.'"  Op. at 4.  The Court later added that "[a] search of newspapers.com, which aggregates uses of various phrases in newspapers and newspaper advertisements yields more than 55 million matches for the phrase 'we buy houses,'" and "a Google search of 'we buy houses' yields hundreds of thousands of websites using the phrase."  Op. at 8.  In so finding, the Court overruled WBH's evidentiary objections that EHB's Internet search results evidence was not reliable, not relevant, and not admissible.  However, the evidence was not reliable and, in fact, is grossly inaccurate.

A www.newspapers.com search for the phrase "we buy houses" (in quotes) does *not* yield 52,295,853 results as EHB claimed, but rather only *351,916* results.  *See* Joshua Cumby Declaration ("Cumby Decl.") ¶¶ 3, 4; Ex. 1.  Likewise, a Google search for the phrase "we buy houses" (in quotes) does *not* yield "hundreds of thousands of websites" as EHB claimed, but rather only *140* results across 14 pages.  Cumby Decl. ¶¶ 5, 6; Ex. 2.  It seems EHB crudely searched www.newspapers.com and Google without placing the words "we buy houses" in

4

quotes and thus its figures included every time the three words ("we"; "buy"; and "houses") appeared in an article or on a website—even if the words did not appear next to each other, *e.g.*, a newspaper article that reports, "When asked how he and his wife would spend their lottery winnings, Mr. Smith replied '*we*'ll first *buy houses* for our parents!'" Though WBH assumes that EHB did not intend to mislead, the Court relied on EHB's gross overstatement of "we buy houses" Internet search results (less than 1% of what EHB claimed) and was misled.

Beyond this, the fact that the words "we buy houses" can be found on the Internet does not demonstrate that the words are a generic term for a residential real estate investor. *See, e.g.*, WBH's Opp'n at 12 ("EHB's search for 'WE BUY HOUSES' suffers from [a] self-selection infirmity. The search does not reveal how real estate investors are generally known in the relevant commercial market. Instead, the search only yields results that include the search terms."). Although the words "we perform magic," "we grow cotton," or "we sell guns" can be found on the Internet and can describe what someone does, magicians are not known as "we perform magic" entertainers, cotton growers are not known as "we grow cotton" farmers, and gun dealers are not known as "we sell guns" businesses.

The number of times "we buy houses" has appeared on the Internet also does not dictate a finding of genericness. Indeed, a search of "realtor" yields 17,945,951 results on www.newspapers.com and 390 results on Google, *i.e.*, several times more results than "we buy houses," but Realtor® is not generic. *See* Cumby Decl. ¶¶ 7-12, Exs. 3-5. In any event, because the Court so heavily relied on EHB's Internet search results evidence and this evidence was false, WBH respectfully requests that the Court issue an amended opinion that explains that a search of the phrase "we buy houses" yields only 351,916 results on www.newspapers.com and 140 results on Google.

III.    **The Court Mistakenly Found That, When Persons Have Used "We Buy Houses" To Describe What They Do, This Is Generic Use As Opposed To Descriptive Or Classic Fair Use.**

The Court's opinion mistakenly treats descriptive use of the words "we buy houses" by someone to describe what they do, *i.e.*, a form of classic fair use, to be generic use of the words "we buy houses."  In so doing, the Court did not appreciate that, by definition, words that describe what someone does are descriptive and not generic.  This error – conflating descriptive use with generic use – is repeated throughout the opinion.  The Court found: "[t]he use of the Marks on other websites and in newspapers by third parties *to describe the services offered* and not the source of the services is compelling evidence that the phrase 'we buy houses' is generic"; "more than 55 million matches for the phrase 'we buy houses' [shows] that the phrase is used extensively by third parties as a *descriptor of services*, not as an indicator of the source of the services"; "it is clear that the phrase is used extensively by a variety of other businesses *to describe the class of services* that they provide and not to identify the source of the services"; and "[t]he record discloses that numerous real estate professional use 'we buy houses' in online marketing and advertising to describe the house-buying service they provide and not to the source of the service."  Op. at 8-9, 11 (emphases added).

The Court's analysis thus emphasizes that the words "we buy houses" are descriptive when used by residential real estate investors to describe what they do.  This part of the Court's analysis is correct.  WBH has always acknowledged this.  And the USPTO previously determined that the words "we buy houses" are descriptive when it issued registrations for "WE BUY HOUSES" and "webuyhouses.com."  But the Court's analysis goes off track when it finds that descriptive use of the words "we buy houses" means that the words are generic.  A generic term answers the question "what are you" as it "identifies a class of product or service" and is

"the common name of a product or service."  *See Glover v. Ampak, Inc.,* 74 F.3d 57, 59 (4th Cir. 1996); *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 839 (4th Cir. 1990); *Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1064 (E.D. Va. 2002).  By contrast, a descriptive term "describe[s] a function, use, characteristic, size or intended purpose of the product" or service, *i.e.*, it describes what you do.  *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 169 (4th Cir. 2012).  The Court has mistakenly blurred the distinction between a generic term and a descriptive term – which are not the same under trademark law.

The Court's blurring is revealed by an example it provides of purported generic use.  The Court points to the advertising statement "We buy houses in ANY CONDITION!  We pay CASH and you will not pay any commissions, agents, or fees."  Op. at 11.  But this is not a generic use of the words "we buy houses," *i.e.*, it is not a statement that "we are a 'we buy houses' type of company."  Rather, the statement, *i.e.*, a sentence describing what the company does, is descriptive or classic fair use that is expressly permitted under trademark law and would not support any trademark infringement liability.  *See* 15 U.S.C. § 1115(b)(4) (providing defense to infringement action where "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin."); *Rosetta Stone*, 676 F.3d at 169 ("[d]escriptive, or classic, fair use applies when [an entity] is using a trademark in its primary, descriptive sense *to describe* the [entity's] goods or services") (emphasis in original).  There could be thousands of examples of statements like the one above, but these would not support a finding that "WE BUY HOUSES" or "webuyhouses.com" are generic as a matter of law.

By itself, the fact that the Court correctly found the words "we buy houses" to be descriptive should have caused the Court to appreciate that neither "WE BUY HOUSES" nor "webuyhouses.com" are generic or at least find a genuine issue of material fact in dispute.  This case is not like *Retail Services, Inc. v. Freebies Publishing*, 364 F.3d 535 (4th Cir. 2004), where the evidence established that the word "Freebies" had become synonymous with free stuff and thus was generic.  Rather, although EHB introduced reams of evidence supporting that the words are descriptive, this missed the point because a trademark registration can coexist with others often using the same words to describe what they do, *i.e.*, descriptive or classic fair use.  Instead, EHB needed to establish generic use, *i.e.*, that "we buy houses" has become synonymous with residential real estate investors.  A reasonable jury could find that EHB did not meet this burden.  Just like a junkyard is not called a "we collect junk" type of company, EHB identified no residential real estate investor – other than EHB – that calls itself a "'we buy houses' type of company."  Because the Court mistakenly blurred the distinction between a generic term and a descriptive term, WBH respectfully requests that the Court issue an amended opinion that does not deem evidence of descriptive use of "we buy houses" to be generic use.

**IV.   The Court Did Not Hold EHB To Its Burden To Prove That "We Buy Houses" Is Not A Source Identifier And The Court Overlooked The Substantial Evidence That It Is A Source Identifier As To WBH.**

EHB needed to establish that "WE BUY HOUSES" and "webuyhouses.com" generically identify residential real estate investors and not WBH.  EHB's evidence focused extensively on third-party descriptive use of "we buy houses," and EHB did not address or contest the evidence of WBH's nationwide commercial success and brand awareness.  The Court likewise overlooked this evidence and the absence of any dispute about it and instead found "insufficient [evidence] to create a genuine dispute concerning whether the Marks have acquired secondary meaning."

8

Op. at 9-10.  This was surprising.  The USPTO determined in 2006 and 2007 that "WE BUY

HOUSES" and "webuyhouses.com" had acquired secondary meaning.  WBH's "WE BUY

HOUSES" and "webuyhouses.com" brand has only become far stronger and national in the years

since, *i.e.*, the evidence of secondary meaning has only gotten stronger.

 The Court did not address the secondary meaning evidence established by the prior

owners of the WBH marks.  Webuyhouses.com Corp. developed "WE BUY HOUSES" and

"webuyhouses.com" as a source identifier through the "webuyhouses.com" website obtained in

1997 and later the vanity telephone number—1-888-WE-BUY-HOUSES.  Docket No. 82-6 at

47, 51-54, 92-96, 265, 268, 273-75; Docket No. 82-10 at WBH0756-62; Docket Nos. 82-12, 82-

13; Docket No. 115-2 (Gordon Continued Dep. Tr.) at 445-47.  Webuyhouses.com Corp.

advertised itself as "WE BUY HOUSES" and "webuyhouses.com" to consumers and residential

real estate investors through online advertising, road signs, and widely-distributed newsletters.

Docket No. 82-7; Docket No. 82-6 at 45-49, 121-22; Docket No. 82-10 at WBH0761; Docket

Nos. 82-18, 82-24; Docket No. 82-14 at 255; Docket No. 93-4 at 132-34; Docket Nos. 82-16, 82-

17, 82-19 (a copy of the "WeBuyHouses.communicator (The Official NEWSLETTER of

www.WeBuyHouses.com)"), 82-22 ("We Buy Houses™" newsletter).  Webuyhouses.com Corp.

provided the USPTO with several declarations and voluminous exhibits including "WE BUY

HOUSES" newsletters, advertisements, customer testimonials, annual revenue, and annual

advertising costs supporting that "webuyhouses.com" had acquired distinctiveness in the real

estate investment community.  Docket No. 82-10 at WBH0757-58; *see also* WBH's Mot. at 8.

As Mr. Gordon explained in his July 2006 declaration, "we ARE the one known under the

trademark 'WEBUYHOUSES.COM'."  Docket No. 82-10 at WBH0761, WBH0806-824; *see*

*also* Docket No. 82-14 at 209; WBH's Mot. at 8, 18.

The Court also did not address the secondary meaning evidence introduced through the sworn declarations of WBH's CEO, Jeremy Brandt.  Mr. Brandt created WBH after seeing the opportunity for "a well-known national brand to bring professionalism, honesty, integrity, and transparency to the residential real estate investing industry."  Brandt Decl. ¶ 10.  Over the past several years, WBH, WBH's network of 61 licensees, and their approximately 200 employees in nearly every major residential housing market in the country have extensively promoted WBH's "WE BUY HOUSES" and "webuyhouses.com" national brand across the country.  Brandt Decl. ¶¶ 12, 14, 15, 18; Brandt Suppl. Decl. ¶¶ 4-6.  Along with extensive television and radio advertising in major markets, as well as online and social media advertising, WBH promotes its "WE BUY HOUSES" and "webuyhouses.com" brand on billboards, car wraps, road signs, yard signs, and even clothing.  *Id.*; Docket No. 100-1 (Third Declaration of Jeremy Brandt) ("3d Brandt Decl.") ¶ 3.  WBH promotes itself as "WE BUY HOUSES" and "webuyhouses.com" in real estate educational flyers, letters, and newsletters that WBH distributes to consumers and residential real estate investors, as well as in educational, instructional, and teaching content on its webuyhouses.com website.   Brandt Decl. ¶ 14; 3d Brandt Decl. ¶ 3.  WBH has received substantial positive national media coverage, including in *The Washington Post* and *The New York Times*.  3d Brandt Decl. ¶ 2.  WBH's webuyhouses.com website has received over one billion impressions or visits from consumers.  Brandt Decl. ¶ 27.  These are the reasons why Mr. Brandt explained, "We Buy Houses is our brand.  When people hear the phrase 'we buy houses,' they think of our company."  Brandt Decl. ¶ 18.[2]

---

[2]     "Multiple times a week potential home sellers have contacted WBH and expressed confusion because they had been in contact or had a negative experience with another company (possibly EHB) that called itself 'We Buy Houses' and believed that this company was WBH."  Brandt Suppl. Decl. ¶ 7.

At bottom, it appears that the Court determined that words like "WE BUY HOUSES" can rarely be a source identifier.  The Court explained that "allowing one member of the industry to trademark the phrase 'we buy houses' would be the equivalent of allowing a professional football team to trademark 'we play football' or a fast-food chain to trademark 'we sell burgers.'"  Op. at 12.  As discussed above, however, a trademark registration would not prevent a football team or fast-food chain from making fair use of these words to describe what they do.  There are also many trademark registrations like "WE BUY HOUSES" or "we play football" or "we sell burgers" where the USPTO found a descriptive mark had become a source identifier.  These include: We Buy Cars®; We Buy Gold®; We Make Movies®; We Make Housecalls®; We Make Love®; We Make Holes®; We Make You Look Good®; We Sell Apartments®; We Sell Restaurants®; We Sell Fun®; We Play Everything®; We Play Hard®; We Play It All®; and We Play Your Favorite Oldies®.  Cumby Decl. ¶¶ 7, 8; Ex. 3.  There is also a registration for webuy.com® and, as noted above, for Realtor®.  *Id*.  Just as these common and ordinary words are someone's brand, so too are "WE BUY HOUSES" and "webuyhouses.com."

Even though this was EHB's burden, EHB had no evidence that, when a real estate industry professional or consumer sees "WE BUY HOUSES" or "webuyhouses.com," they perceive this to identify residential real estate investors generically and not to identify WBH.  By contrast, WBH introduced substantial evidence that WBH is very well known to tens of thousands of real estate industry professionals and consumers as "WE BUY HOUSES" and "webuyhouses.com."  *See, e.g.*, Brandt Decl. ¶ 27 ("Since 2012, We Buy Houses has received over one billion impressions by investors and consumers.  Along with everything Gordon and Price did before me, over the past several years, millions of people have been reached by the We Buy Houses brand in a positive way.").  Because the Court's opinion did not hold EHB to its

evidentiary burden or address the substantial uncontested evidence supporting that WBH has

acquired secondary meaning in "WE BUY HOUSES" and "webuyhouses.com," WBH

respectfully requests that the Court issue an amended opinion that addresses this evidence.

**V.     The Court Mistakenly Found That The Prior Owners Of The Marks Did Not Use Them As A Source Identifier.**

The Court found that "the previous owners of the Marks used 'we buy houses' as a

generic description of the services they offered, not to identify the source of the services." Op. at

10-11. This finding was incorrect because the previous owners used "we buy houses" to

describe what they did (another example of descriptive or classic fair use) *and* as a source

identifier. There was nothing wrong with this, and the two purposes are not mutually exclusive.

Michel Payette used "WE BUY HOUSES" to refer to his real estate investment company.

WBH's Mot. at 5-6, 16; Docket No. 82-25 at 23, 33, 49, 76-78, 102; *see also* Docket Nos. 82-26,

82-27; WBH's Opp'n at 2-3; WBH's Reply at 12-14. Mr. Gordon and Martin Price likewise

used "WE BUY HOUSES" and "webuyhouses.com" to identify their business, which in fact was

named "Webuyhouses.com Corp." WBH's Mot. at 4-8; Docket No. 82-7; Docket No. 82-6 at

45-49; Docket No. 82-10 at WBH0761; Docket Nos. 82-18, 82-24; WBH's Opp'n at 2-3;

WBH's Reply at 13, 15. EHB did not dispute this evidence. Because the uncontested evidence

establishes that the prior owners *did* use "WE BUY HOUSES" and "webuyhouses.com" to

identify their companies and the source of their services, WBH respectfully requests that the

Court issue an amended opinion acknowledging this.

**VI.    The Court Did Not Hold EHB To Its Burden To Prove That "WeBuy Houses.com" Is Generic And Not A Source Identifier.**

The Court's finding that "webuyhouses.com" is generic and thus cancelled is especially

troubling and should be reconsidered. There is and has only been one webuyhouses.com. As

Mr. Gordon has explained and public domain-name records confirm, the website has been in existence since 1997.  Mr. Gordon described how he registered the webuyhouses.com domain name and used webuyhouses.com as early as 1997, and that he and his company, Webuyhouses.com Corp., continued to use, advertise, and license webuyhouses.com after the company was incorporated in 2001.  Docket No. 82-6 at 47, 51-54, 92-96, 265, 268, 273-75; Docket No. 82-10 at WBH0756-62; Docket Nos. 82-12, 82-13.  EHB introduced no evidence that anyone other than WBH has ever used "webuyhouses.com" or anything similar as a website or in any advertising.  EHB introduced no evidence that anyone would see "webuyhouses.com" and perceive it to identify the business of residential real estate services generically.  EHB introduced no evidence that "webuyhouses.com" is generic.

The Court's opinion separately addressed "webuyhouses.com" in a footnote which misstates the record evidence.  The Court states: "the mere addition of '.com' to an otherwise generic mark does not give it source-signifying distinctiveness, especially where, as here, the mark is used in the website addresses of other retailers that provide the same service as the mark owner"; and "the record contains substantial evidence of other housebuying companies that have website addresses similar to 'webuyhouses.com.'"  Op. at 10 n.5.  For support, the opinion cites Appendix 1 to EHB's motion for summary judgment (Docket No. 64-1).  But EHB's 30-page appendix lists only one domain name – "jerredbuysaustinhouses.com" – that is arguably at all similar to "webuyhouses.com" and actually is not similar at all.  *See id.* at 1.  Thus, contrary to the Court's finding, there is *not* "substantial evidence of other housebuying companies that have website addresses similar to 'webuyhouses.com.'"  The Court's finding that "webuyhouses.com" is generic is not supported by the record.

The Court's finding that "webuyhouses.com" is generic is also inconsistent with recent case law very much on point. In *Booking.com B.V. v. Matal*, 278 F. Supp. 3d 891 (E.D. Va. 2017), *amended,* No. 1:16-CV-425LMBIDD, 2017 WL 4853755 (E.D. Va. Oct. 26, 2017), the plaintiff, an online travel reservation company, sought relief after the USPTO refused to grant its application seeking registration of "booking.com." U.S. District Judge Leonie M. Brinkema found that, even though the term "booking" was generic, the term "booking.com" was descriptive with acquired distinctiveness and thus ordered the USPTO to issue the trademark registration. *Id*. at 923-24. Judge Brinkema explained that, although a top-level domain like .com "has no source identifying significance in and of itself, in combination with [even a generic term], it indicates a domain name, which, like a telephone number, is unique." *Id.* at 909. The fact that *Booking.com* concerned the USPTO's denial of registration, while this case concerns the USPTO's issuance of a registration which long ago became incontestable, supports even more that "webuyhouses.com" has long had source-signifying distinctiveness and that the USPTO's decision should not be undone. The Federal Circuit has likewise found that "the addition of [.com to a mark] can show Internet-related distinctiveness, intimating some 'Internet feature' of the item." *In re Steelbuilding.com*, 415 F.3d 1293, 1297 (Fed. Cir. 2005). *See also* WBH's Mot. at 22-23. The Court's opinion does not address this authority.

It remains unclear why EHB sought to cancel "webuyhouses.com," but the record is clear that EHB introduced no evidence on this claim. The mark is not generic but instead has long been a source identifier for WBH. Because the Court's determination that "webuyhouses.com" is generic is not supported by the evidence and is inconsistent with recent analogous case law, WBH respectfully requests that the Court issue an amended opinion that finds that there are no similar domain names and finds that "webuyhouses.com" is not generic.

**<u>CONCLUSION</u>**

WBH means no disrespect in moving for reconsideration.  WBH knows the Court

devoted considerable time, energy, and resources analyzing the issues and preparing its opinion.

But there were errors.  The evidence introduced by EHB and deemed uncontested by this Court

was contested and consisted almost entirely of EHB's self-serving testimony and third parties

using "we buy houses" to describe what they do.  This only supports that the phrase is

descriptive and not that "WE BUY HOUSES" and "webuyhouses.com" are generic terms for

residential real estate investors.  And the Court's opinion did not acknowledge the uncontested

evidence, not even addressed by EHB, establishing that WBH has grown a well-known and

successful nationwide business built on its brand.  There are also several instances – including

EHB's Internet search results evidence, the fact that the prior owners of the WBH marks did use

them as source identifiers, and the absence of any domain name similar to "webuyhouses.com" –

where the Court's opinion inadvertently misstated important facts which necessarily affected the

Court's analysis.  The courts, the parties, and the public are best served by an opinion that

corrects these errors.  Accordingly, WBH respectfully requests that this Court grant WBH's

motion for reconsideration, vacate its August 15, 2018 Memorandum Opinion and Order, and

issue an amended opinion correcting these factual and legal errors.


August 21, 2018                                    Respectfully submitted,

                                                   <u>/s/ *Joshua Counts Cumby*          </u>
                                                   Joshua Counts Cumby (VA Bar No. 82021)
                                                   Damon W.D. Wright (VA Bar No. 40319)
                                                   Roger A. Colaizzi (VA Bar No. 32651)
                                                   VENABLE LLP
                                                   600 Massachusetts Avenue NW
                                                   Washington, DC 20001
                                                   (202) 344-4000 telephone
                                                   (202) 344-8300 fax

15

jccumby@venable.com
dwdwright@venable.com
racolaizzi@venable.com

*Counsel for Defendant and Counterclaim Plaintiff*
*WBH Marketing, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 21, 2018, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to

all counsel of record.

      <u>    /s/ *Joshua Counts Cumby*    </u>
Joshua Counts Cumby (VA Bar No. 82021)
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 20001
(202) 344-4000 telephone
(202) 344-8300 fax
jccumby@venable.com

*Counsel for Defendant and Counterclaim Plaintiff*
*WBH Marketing, Inc.*

17