THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| EXPRESS HOMEBUYERS USA, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-cv-736 |
| v. | ) | |
| | ) | |
| WBH MARKETING INC., | ) | |
| Defendant. | ) | |

## ORDER

By Memorandum Opinion and initial Order dated August 14, 2018, plaintiff's motion for summary judgment was granted as to its claims seeking cancellation of defendant's two trademarks, "We Buy Houses" and "We Buy Houses.com" on the ground that both marks are generic. *Express Homebuyers USA, LLC v. WBH Mktg. Inc.*, _ F. Supp. 3d _ (E.D. Va. 2018); Order, Aug. 14, 2018. Plaintiff's motion was also granted as to defendant's trademark infringement and false designation of origin counterclaims because those claims are dependent on the validity of the Marks.

Still to be resolved in this action are defendant's six additional counterclaims, which allege various claims for false advertising, defamation, and conspiracy. Plaintiff seeks summary judgment on these counterclaims,[1] and defendant has filed a cross-motion for summary judgment on two counterclaims alleging false advertising based on plaintiff's statements about itself. Because there are no disputed issues of material fact with respect to these counterclaims, plaintiff's motion for summary judgment with respect to the remaining counterclaims—

---

[1] Also at issue is plaintiff's motion to dismiss the false advertising counterclaims—Counterclaim Counts III, VIII and IX—for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. Because the parties' motions for summary judgment have addressed the arguments contained in plaintiff's motion to dismiss and because the summary judgment record is extensive, it is appropriate here to deny plaintiff's motion to dismiss and to resolve all of the counterclaims pursuant to the parties' cross-motions for summary judgment.

Case 1:17-cv-00736-TSE-IDD   Document 128   Filed 08/29/18   Page 2 of 15 PageID# 6933

Counterclaim Counts III, V, VI, VII, VIII and IX — must be granted and defendant's cross-motion for summary judgment on Counterclaim Counts VIII and IX must be denied.

## I.

Given that summary judgment is appropriate only where there are no genuine disputes of material fact, Fed. R. Civ. P. 56, the first step in the analysis is to identify the record facts as to which no genuine dispute exists. In this regard, Local Rule 56(B) directs a movant for summary judgment to include in its submission a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. Local Civ. R. 56(B). *See also* Rule 16(b) Scheduling Order ¶ 13, Oct. 19, 2017. The nonmovant must then respond to each numbered paragraph, either admitting or contesting the putative undisputed fact and citing admissible record evidence to establish a genuine dispute of material fact. The nonmovant's failure to respond to a fact listed by the movant constitutes an admission that the fact is undisputed. Rule 16(b) Scheduling Order ¶ 13, Oct. 19, 2017.

In this case, both parties essentially complied with the requirements. Accordingly, the facts recited here are derived from the parties' lists of material facts that are not disputed and their respective responses. These facts all occurred before the grant of summary judgment to the plaintiff as to the invalidity of the defendant's two trademarks.

- Plaintiff Express Homebuyers (EHB) is a limited liability company organized under Virginia law with its principal place of business in Springfield, VA. EHB has been in the house-buying industry since 2003, operating chiefly in the Washington, D.C. metropolitan area. Lawrence Bradford Chandler is EHB's CEO.

- Defendant WBH Marketing (WBH) is a Texas corporation with its principal place of business in Southlake, TX. WBH provides educational and instructional materials to home buyers and sellers and conducts its operations nationwide. Jeremy Brandt is a citizen of Texas and is WBH's founder and CEO.

2

- WBH owns the two registered marks at issue: "We Buy Houses" and "Webuyhouses.com" ("the Marks").[2]

- Prior to the entry of the Order granting summary judgment to EHB on the invalidity of the Marks, WBH directed real estate investors to remove the words "we buy houses" from Facebook, websites, blogs, Twitter, YouTube, and other marketing. CD, Ex. 122. WBH requested that YouTube remove EHB's marketing and advertising videos featuring the words "we buy houses." WBH told real estate investors that by using "we buy houses," they were attempting to confuse consumers and imitate WBH. *Id.* WBH told real estate investors that use of "we buy houses" in marketing content was trademark infringement. Brandt told WBH executive Dev Horn, "That's how we roll. Facebook page – GONE." *Id.* Ex 120. Horn further stated that WBH needed to "scare the sh*t" out of investors using "we buy houses" and that WBH should "GET THOSE MOTHER F*****S."

- Real estate investors informed WBH of the time and money it would take to remove "we buy houses" from their marketing, and that WBH's actions disrupted businesses.

- EHB has published several statements concerning WBH's efforts to enforce its trademark rights in the Marks. These include assertions that WBH's efforts to enforce its trademark rights in the Marks are "wrong" and that WBH is a "trademark bully"; WBH is "threatening everyone using [we buy houses] in any way, shape or form with legal action"; WBH is "attempting to force real estate investors into giving up their websites, social media, and marketing materials" and that WBH's efforts to enforce the WBH marks "are disrupting investor's businesses" and "undermining [their] livelihood[s]"; WBH "bullies," "threatens," "shakes down," "sabotages" and "extorts" others in the home buying industry; and an implied or express assertion that WBH did not have protectable rights in the Marks.

- EHB's has advertised on its website and other media that it "Buy[s] Your House In 7 Days," that it is the "#1 Homebuyer" in various localities, and that it has "bought hundreds of homes" in various cities.

- WBH's CEO, Brandt, does not know of any potential licensees or homebuyers who chose not to contact or do business with WBH because they encountered EHB's false advertising but believes that many "may choose to do business with EHB instead of WBH." Brandt Supp. Dec. ¶ 4.

---

[2] Because summary judgment has been granted in favor of plaintiff with respect to the invalidity of the Marks, the analysis proceeds here on that basis.

3

## II.

The summary judgment standard, which the parties do not dispute, is too well-settled to merit extended discussion. As Rule 56, Fed. R. Civ. P., makes clear, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." And it is settled that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On the other hand, if the record reflects a genuine factual dispute, summary judgment is precluded. A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But importantly, the party opposing summary judgment may not rest upon mere allegations and denials, but must instead "set forth specific facts showing that there is a genuine issue for trial." *Id.* Moreover, these specific facts must be shown to exist in the record in legally admissible form. Finally, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

## III.

Counts III, VIII and IX of WBH's First Amended Counterclaims allege that EHB is liable for false advertising under the Lanham Act. *See* 15 U.S.C. § 1125(a)(1). Count III claims that EHB made numerous false statements about WBH's efforts to enforce its trademark rights in the Marks. Counts VIII and IX claim that EHB has falsely promoted and mischaracterized its own services, thereby deceiving consumers.

A plaintiff asserting a false advertising claim under the Lanham Act must establish that:

4

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). Failure to establish any one of these five elements is fatal to a plaintiff's claim. *Id.*

### A.

EHB argues that Counts VIII and IX should be dismissed because WBH has not demonstrated injury, as required by element (5) of a false advertising claim under the Lanham Act. *See id.*

The "indispensable fifth element of a Lanham Act claim" is that the claimant has been or is likely to be injured as a result of the alleged false advertising, "either by direct diversion of sales or by a lessening of goodwill associated with its product." *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 300 (2017). *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32, (2014) (stating that a false advertising claimant must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising"). In other words, the claimant must demonstrate that it has suffered "actual damages." *Verisign, Inc.*, 848 F.3d at 299. *See PM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 122 (summary judgment properly awarded to defendant in Lanham Act case because plaintiff could not prove that allegedly false statements caused any damages); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 286 (4th Cir. 2003) (stating that Lanham Act claimant must "prove actual damages and a causal link between those damages and the Lanham Act violation").

In *Verisign*, the plaintiff's expert committed a "fatal flaw" in alleging false advertising injury because she "assume[d] rather than demonstrate[d]" that every customer that defendant gained during the relevant time period was the result of the defendant's allegedly false statements. *Verisign*, 848 F.3d at 300. Although the expert's report in *Verisign* "show[ed] that [the plaintiff] experienced a drop" in customers after the defendant made allegedly false statements about the plaintiff, this did not demonstrate that the defendant's statements caused the plaintiff's injury; it only demonstrated "correlation," not "causation." *Id.* 301. Moreover, despite claiming a decrease in profits, the expert failed "to quantify any such effect, beyond establishing a temporal connection." *Id.*

Similarly, WBH here has claimed that EHB's alleged misstatements regarding EHB's services have improperly diverted sales from WBH to EHB but WBH has adduced no record facts showing causation or actual damages. Specifically, WBH points to EHB's advertisements that it (i) "Buy[s] Your House In 7 Days," (ii) that it is the "#1 Homebuyer" in various localities, and (iii) that it has "bought hundreds of homes" in various cities. WBH argues that because EHB is a direct competitor and the advertisements target markets in which WBH does business, the advertising necessarily diverts potential home sellers. The analysis of WBH's experts mirrors this understanding. *See* Hill Rebuttal at 4-5. ("[T]he dishonest and inaccurate statements made by Chandler, EHB, and others is the only evidence necessary to establish damage to WBH."). But WBH's CEO, Brandt, admits that he does not "know who chose not to contact or do business with WBH because they encountered EHB's false advertising," and states only that a potential home seller or real estate investor *may have* chosen to do business with EHB instead of WBH. Brandt Supp. Dec. ¶ 4. Indeed, WBH acknowledges that it does not even have evidence that its licensees or revenues have declined at all during the relevant time period. Dep. of WBH Mktg. at

6

181:5-18, 223:24-224:3. Therefore, the record evidence in this case falls even farther short of showing injury than did the evidence in *Verisign*. WBH has failed to demonstrate not only causation, but also correlation of EHB's conduct with actual harm of any kind.[3] Without any evidence of actual damages, WBH's false advertising counterclaims regarding EHB's self-promotion fail. *Verisign*, 848 F.3d at 299-300 (quoting *Lexmark*, 572 U.S. at 131-32) ("[I]t is the core requirement that a plaintiff 'show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising . . . .'"). The Fourth Circuit has made clear that "conclusory" theories of presumed damages are insufficient to meet the actual harm requirement of a Lanham Act claim. *Verisign*, 848 F.3d at 301 (finding insufficient Lanham Act plaintiff's expert's suggestion that defendant's profits were at least partially due to the alleged false advertising and her opinion that market participants were likely to be enticed by the allegedly inflated representation of defendant's services).

Seeking to avoid this conclusion, WBH argues that it is exempt from the actual harm requirement because EHB's statements are "literally false." In support of this argument, WBH cites two cases that pre-date *Lexmark* and *Verisign* for the proposition that "[i]f the advertising claim is literally false, the court may enjoin[4] the use of the claim without reference to the advertisement's impact on the buying public." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997) (internal quotes omitted); *Novartis*

---

[3] WBH argues that it has demonstrated injury because its experts have quantified the relief that WBH seeks in this case. That argument fails. *Verisign* makes clear that it is the "effect" or economic injury that must be quantified; it is insufficient to merely calculate the damages the plaintiff wants. *Verisign*, 848 F.3d at 301. In *Verisign*, the plaintiff's expert concluded that the plaintiff was entitled to $527,000 in lost profits. However, the Fourth Circuit found that the plaintiff had not adequately demonstrated a causal link between the plaintiff's lost profits and the defendant's statements. *Id.* As discussed above, WBH has not even demonstrated any actual injury, much less a causal link to EHB's conduct. The fact that that WBH has quantified the relief it seeks does not change the fact that it has alleged nothing more than presumed damages.

[4] It is also important to note that in this case WBH seeks *damages* and not an injunction. *See Verisign*, 848 F.3d at 299 ("[T]o recover *damages* under the Lanham Act, [the plaintiff] must show . . . actual damages.") (emphasis added).

*Consumer v. Johnson & Johnson*, 290 F.3d 578, 586 (3d Cir. 2002). More recently, however, the Fourth Circuit has unequivocally held that "to recover damages under the Lanham Act, [the plaintiff] must show not only false advertising by [the defendant], but also that [the defendant's] statements caused [the plaintiff] actual damages." *Verisign*, 848 F.3d at 299. WBH also quotes from *Lexmark* itself, which states that "[e]ven when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to . . . disgorgement of the defendant's ill-gotten profits under § 1117(a)." *Lexmark*, 572 U.S. at 135-36. But WBH misreads this quote as permitting a claimant to escape or avoid the requirement to show that a defendant's false advertising proximately caused an injury. Lexmark does not eliminate this requirement. *Lexmark*, 572 U.S. at 135-36 (explaining that only when a plaintiff has adequately shown injury and causation may it recover disgorgement of defendant's profits under § 1117(a)). And as *Verisign*, which applies *Lexmark*, makes clear, "it is the core requirement that a plaintiff 'show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising' . . . in Lanham Act cases." *Verisign*, 848 F.3d at 300 (quoting *Lexmark*, 572 U.S. at 133). WBH has cited to no authority to relieve it of this burden, and this summary judgment record does not disclose a factual basis for injury.

**B.**

EHB argues that Count III should be dismissed because EHB's allegedly disparaging statements concerning WBH's commercial activity are not actionable as false statements, as required by element (1) of a false advertising claim under the Lanham Act. *See PBM Prods.*, 639 F.3d at 120.

The threshold element of a false advertising claim is a showing that the defendant made a false or misleading representation of fact about his own or another person's goods, services, or

commercial activities. 15 U.S.C. § 1125(a)(1); *PBM Prods., LLC v. Mead Johnson & Co.*, 639

F.3d 111, 120 (4th Cir. 2011). In other words, (1) the contested statement must be false, and (2)

it must be a representation of fact. *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501

(4th Cir. 2015). With respect to the falsity requirement, the statement, to be actionable, "must be

either false on its face or, although literally true, likely to mislead and to confuse consumers

given the merchandising context." *PBM Products*, 639 F.3d at 120 (quoting *C.B. Fleet Co. v.*

*SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir.1997)). And to be a

statement of fact, it must be a "specific and measurable claim, capable of being proved false or

of being reasonably interpreted as a statement of objective fact." *Design Resources*, 789 F.3d at

502. Therefore, statements of opinion or puffery—"exaggerated advertising, blustering, and

boasting"—cannot be the basis of a false advertising claim because they "cannot be interpreted

as a verifiable statement of objective fact". *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 302

(2017).

      In *Verisign*, the Fourth Circuit rejected the plaintiff's claim that certain statements made

by the defendant falsely disparaged the plaintiff's product because the statements were not

actionable statements of fact. *Id.* at 303. For example, the court in *Verisign* found that the

statement that it is "impossible to find the domain name that you want" was mere puffery and

thus not actionable because the statement as a whole constituted an exaggerated, blustery

assertion of subjective value and an opinion about consumer preference. *Id.* Furthermore, the

Fourth Circuit in *Verisign* made clear that certain statements that might be read as a verifiable

factual statement must be read in context to determine how the consuming public would

understand the statement. Thus, the court in *Verisign* rejected the plaintiff's argument that the

statement "[t]he only thing that's left is something with a dash or maybe three dashes and a

couple of numbers in it" was actionable because it could be proven false. According to the *Verisign* court, the statement needed to be read along with the statement "[a]ll of the good real estate is taken," which showed that the overall message was a subjective opinion about the quality of the available domain names. *Id.*

Here, it is evident that EHB's statements that WBH's efforts to enforce the WBH marks are "wrong" and that WBH is a "trademark bully" are statements of opinion because they assert EHB's subjective assessment of WBH's commercial activity. *See Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 202 n.12 (E.D. Va. 2010) ("[W]hether . . . conduct [is] indeed harassing, bullying, or otherwise inappropriate . . . are matters of opinion."); *Shipyard Brewing v. Logboat Brewing*, 2017 WL 6733971, at *4 (W.D. Mo. Dec. 29, 2017) (holding that calling a competitor a "trademark bully" was a non-actionable statement of opinion). These statements, therefore, are non-actionable as false advertising.

Next, the statement that WBH is "threatening everyone using [we buy houses] in any way, shape or form with legal action" is also not an actionable disparaging statement. The record contains an abundance of examples of WBH directing third parties to cease using "we buy houses" in a variety of manifestations on Facebook, websites, blogs, Twitter, YouTube, and physical signs, and WBH's communications were largely accompanied by warnings about the legal consequences of trademark infringement. Ugo Colella Dec., Ex. 121 ("[T]he three words together 'We Buy Houses' with anything before or after is an infringement."); *id.*, Ex. 122 (WBH CEO Brandt stating, "We contact hundreds of people who are perhaps unknowingly crossing the line."; member of WBH legal team communicating, "The best practice is to not have 'We Buy Houses' anywhere on your marketing."). Therefore, even if WBH did not threaten literally "everyone" using the Marks in "any way, shape or form," there clearly was a factual

basis for EHB's statement, and the statement at most constitutes a non-actionable, blustery exaggeration. *See Verisign*, 848 F.3d at 303.

Likewise, EHB's statements that WBH is "attempting to force real estate investors into giving up their websites, social media, and marketing materials" and that WBH's efforts to enforce the WBH marks "are disrupting investor's businesses" and "undermining [their] livelihood[s]" have a factual basis in the circumstances of this dispute. *See, e.g.*, Ugo Colella Dec., Ex. 120 (WBH CEO Brandt stating, "That's how we roll. Facebook page – GONE."); *id.*, Ex. 122 (an affected real estate investor emailing Brandt, "PLEASE reinstate me on [Facebook]. This is Day three that I can not [sic] interact with people . . . . I have clients who rely on me for marketing their homes . . . ."). Therefore, the remarks at most constitute "an exaggerated, blustery assertion." *See Verisign*, 848 F.3d at 303. In the same vein, EHB's assertions that WBH "bullies," "threatens," "shakes down," "sabotages" and "extorts" others in the home buying industry would be understood by a consumer to be a blustery, subjective characterization of how WBH's efforts to enforce its purported Marks have affected its competitors.

Finally, WBH challenges implied and express assertions by EHB that WBH did not have protectable rights in the Marks. While at first glance it may appear that an assertion about whether WBH owned the trademark rights to the Marks could be proven true or false, the statements must be viewed in context. *Id.* Here, in the context of EHB's campaign to raise funds to finance a lawsuit seeking cancellation of WBH's Marks, it is clear that any statements suggesting the Marks were invalid as a matter of fact clearly should be interpreted to communicate EHB's subjective opinion—that it was unjust for a commonly used phrase to be trademarked and that the PTO had erred when it found the Marks were not generic.

11

**IV.**

Count V of WBH's First Amended Counterclaims allege that EHB is liable under Virginia common law for defaming WBH's business reputation.[5] Specifically, WBH takes issue with the same allegedly false statements about WBH's efforts to enforce its trademark rights in the Marks that were the basis of its false advertising claim in Count III. EHB repeats its argument that Count V should be dismissed because its allegedly disparaging statements are not actionable as false statements about WBH's commercial activity.

Under Virginia law, the elements of defamation are "(1) publication about the plaintiff, (2) an actionable statement, and (3) the requisite intent." *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992). An actionable statement must be both false and defamatory. *Id.* To be false, the statements must "contain a provably false factual connotation," *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1988). Moreover, the statements must be interpreted by assessing how a reasonable third party would understand "the plain language of the statement and the context and general tenor of its message." *Snyder v. Phelps*, 580 F.3d 206, 219 (4th Cir. 2009). In this regard, the Fourth Circuit has held that "[t]he general tenor of rhetorical speech, as well as the use of 'loose, figurative, or hyperbolic language' sufficiently negates any impression that the speaker is asserting actual facts." *Snyder v. Phelps*, 580 F.3d 206, 220 (4th Cir. 2009) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)). Likewise, a statement of opinion is only actionable

---

[5] In its First Amended Counterclaims, WBH refers to the tort of "trade libel." First Am. Countercls. Count V. However, trade libel (or "product disparagement") applies to "[s]tatements which discredit the quality or utility of a producer's goods," *Gen. Prod. Co. v. Meredith Corp.*, 526 F. Supp. 546, 553 (E.D. Va. 1981), whereas WBH's claim deals with EHB's statements about WBH's commercial activity that have allegedly damaged WBH's business reputation. First Am. Countercls. ¶¶ 110, 113. And WBH appears to acknowledge that defamation is the relevant tort because it sets out the elements for defamation, not trade libel, in its response to EHB's summary judgment brief. WBH Marketing, Inc.'s Opposition to Countercl. Def.'s Mot. for Sum. J. at 25.

if it "can be reasonably interpreted to declare or imply untrue facts." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich*, 497 U.S. at 20).

Here, WBH claims that it has been defamed by a variety of EHB's statements regarding WBH's efforts to enforce its trademark rights in the Marks. These statements include assertions that, for example, WBH is a "trademark bully"; WBH is "threatening everyone using [we buy houses] in any way, shape or form with legal action"; WBH "bullies," "threatens," "shakes down," "sabotages" and "extorts" others in the home buying industry; and an implied or express assertion that WBH did not have protectable rights in the Marks. As explained in part III.B, *supra*, a reasonable consumer would interpret these statements to consist of EHB's subjective opinions or rhetorical exaggerations that have a grounding in the facts in the record. Therefore, under Virginia defamation law, as under the Lanham Act, these statements are not actionable.

## V.

Finally, Counts VI and VII of WBH's First Amended Counterclaims allege that EHB is liable for common law and statutory conspiracy for conspiring to harming WBH's business by misrepresenting WBH's efforts to enforce its trademark rights in the Marks. EHB argues that Counts VI and VII should be dismissed because no actionable tort was committed.

Business conspiracy under Virginia Code § 18.2-499 requires "(1) concerted action; (2) legal malice; and (3) causally related injury." *Livia Properties, LLC v. Jones Lang LaSalle Americas, Inc.*, No. CIV.A. 5:14-00053, 2015 WL 4711585, at *9 (W.D. Va. Aug. 7, 2015). And the elements of common law conspiracy are "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 204 (E.D. Va. 2010).

13

Under Virginia law, a claim of either statutory or common law conspiracy requires proof that the underlying tort or a violation of a legally protected interest was committed. *Virginia Vermiculite, Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277, 284 (4th Cir. 2002) (citing *Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44 (1995) ("Where there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong.")); *Taylor*, 782 F. Supp. 2d at 204-05 (citing *Almy v. Grisham*, 273 Va. 68, 80 (2007). As discussed above and in the earlier Memorandum Opinion, *Express Homebuyers USA, LLC v. WBH Marketing, Inc.*, _ F. Supp. _ (E.D. Va. 2018), each of WBH's counterclaims fails as a matter of law. Therefore, without any actionable underlying claim, WBH's conspiracy counterclaims do not survive.

## VI.

For the reasons discussed above and for good cause,

It is hereby **ORDERED** that plaintiff's motion for summary judgment (Doc. 63) must be **GRANTED**, and therefore Counterclaims III, V, VI, VII, VIII and IX are dismissed.

It is further **ORDERED** that plaintiff's motion to dismiss for lack of subject matter jurisdiction (Doc. 60) must be **DENIED** as Counts III, VIII and IX are resolved on plaintiff's summary judgment motion.

It is further **ORDERED** that defendant's motion for summary judgment (Doc. 81) must be **DENIED** as to Counts VIII and IX.

14

The Clerk is directed to send a copy of this Order to all counsel of record.


Alexandria, Virginia
August 29, 2018


/s/
T. S. Ellis, III
United States District Judge