THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EXPRESS HOMEBUYERS USA, LLC, ) | |
|     Plaintiff, ) | |
| ) | Case No. 1:17-cv-736 |
| v. ) | |
| ) | |
| WBH MARKETING INC., ) | |
|     Defendant. ) | |

## ORDER

By Memorandum Opinion and initial Order dated August 14, 2018, plaintiff's motion for summary judgment was granted as to its claims seeking cancellation of defendant's two trademarks, "We Buy Houses" and "We Buy Houses.com" ("the Marks") on the ground that both marks are generic. *Express Homebuyers USA, LLC v. WBH Mktg. Inc.*, _ F. Supp. 3d _ (E.D. Va.) (hereinafter referred to as "Memorandum Opinion"); Order, Aug. 14, 2018. Plaintiff's motion was also granted as to defendant's trademark infringement and false designation of origin counterclaims as those claims are dependent on the validity of the Marks.

Defendant subsequently filed a Motion for Reconsideration, seeking an amended opinion due to "several factual and legal errors." Because defendant's motion discloses no clear error of law or fact in the Memorandum Opinion, defendant's Motion for Reconsideration must be denied.

I.

Defendant erroneously cites Rule 60(b) as the basis of its motion. This reliance is erroneous because the Memorandum Opinion did not dispose of all the claims in the case. And as the Fourth Circuit has made clear, "where the entry of *partial* summary judgment fails to resolve all claims in a suit, Rule 54[(b)]—not Rule 59(e) or 60(b)—governs a motion for

1

reconsideration . . . ." *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 546-47 (E.D. Va. 2010) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003)). *See also Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (stating that Rule 54(b) gives a district court discretion to revise an interlocutory order such as an order for partial summary judgment). In general, a motion for reconsideration of an interlocutory order is appropriate where "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (quoting *Am. Canoe Ass'n*, 326 F.3d at 515). Because defendant's motion for reconsideration does not cite any intervening change in controlling law or newly discovered evidence that was not previously available, the only basis for reconsideration of the Memorandum Opinion and Order is clear error. Because the Memorandum Opinion and Order contain no clear error in law or fact that would work manifest injustice on the parties, defendant's Motion for Reconsideration must be denied.

## II.

Defendant first argues that the Memorandum Opinion mistakenly lists as an undisputed fact that professional home buyers are known as "we buy houses companies." This argument fails.

As noted in the Memorandum Opinion, Local Rule 56(B) directs the party seeking summary judgment to include a separately captioned section listing in numbered-paragraph form all material facts as to which the moving party contends no genuine dispute exists. Mem. Op. 2. The nonmovant must then respond to each numbered paragraph, either admitting or contesting the asserted undisputed fact and citing admissible record evidence to establish a genuine dispute

2

of material fact. *Id.* Importantly, the nonmovant's failure to respond to a listed fact in this way constitutes an admission that the fact is undisputed. *Id.*; Local Civ. R. 56(B); Rule 16(b) Scheduling Order ¶ 13, Oct. 19, 2017.

Here, plaintiff properly listed as an undisputed fact that "[r]eal estate investors who buy houses are often referred to as 'we buy houses companies,' and consumers (house sellers) have the same understanding because of the ubiquity of 'we buy houses' road signs," citing the testimony of Bradford Chandler, a thirty-page exhibit, and twenty-three exhibits. Br. in Supp. of Pl. Countercl. Def.'s Mot. for Summ. J. ¶ 1. In response, defendant did not cite to *any* admissible record evidence to establish a dispute of material fact as to plaintiff's contended undisputed fact. Instead, defendant merely asserted incorrectly that plaintiff "has no admissible evidence that real estate investors are often referred to as 'we buy houses companies.'" WBH Mktg., Inc.'s Opp. To Countercl. Def.'s Mot. for Summ. J. ¶ 1. To the contrary, as noted in the Memorandum Opinion, the evidence cited by plaintiff for this fact is admissible. *See* Mem. Op. 4 n.3. Therefore, because defendant, the nonmovant, failed to cite record, admissible evidence to dispute the asserted undisputed fact listed by plaintiff, this fact was properly taken as an admitted undisputed fact. Local Civ. R. 56(B); Rule 16(b) Scheduling Order ¶ 13, Oct. 19, 2017.

Next, defendant argues that it did in fact elsewhere dispute the contention that home-buying companies are called "we buy houses companies." First, it points to examples where its briefs assert that house-buying companies are not referred to as "we buy houses companies." *See, e.g.*, Reply in Supp. of WBH's Mot. for Partial Summ. J. at 2-3. By noting this, defendant fails to recognize the basic principle that "the party opposing summary judgment may not rest upon mere allegations and denials, and must instead 'set forth specific facts showing that there is a genuine issue for trial.'" Mem. Op. 5 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3

248 (1986). A denial in the nonmoving party's brief does not create a genuine issue of material fact. *Downing v. Papa John's USA, Inc.*, 945 F. Supp. 2d 675, 677 (E.D. Va. 2013) (finding that assertions of counsel in a brief without citations to evidence in support of the factual assertion are insufficient to support or oppose a motion for summary judgment).

Second, defendant points to statements on the record made by Jeremy Brandt, WBH Marketing's CEO. Brandt's statements were not cited in defendant's response to plaintiff's paragraph listing as an undisputed fact that house-buying companies are commonly known as "we buy houses companies," as required by Local Rule 56(B). Local Civ. R. 56(B); Rule 16(b) Scheduling Order ¶ 13, Oct. 19, 2017. Putting that aside, Brandt's uncorroborated assertions that the WBH brand is well-known and his descriptions of his company's marketing efforts do not create a genuine dispute as to whether "[r]eal estate investors who buy houses are often referred to as 'we buy houses companies' . . . ." Nor is there any doubt that "consumers (house sellers) have the same understanding because of the ubiquity of 'we buy houses' road signs" in the face of plaintiff's overwhelming and undisputed evidence that third parties understand "we buy houses" to refer to a type of company that provides house-buying services. *See* Mem. Op. 9-10 (finding that Brandt's statements did not create a genuine dispute concerning whether the Marks had acquired source-signifying secondary meaning). Therefore, the Memorandum Opinion correctly concluded that it was undisputed that professional home buyers are known as "we buy houses companies."

### III.

Defendant next argues that the Memorandum Opinion mistakenly relied on plaintiff's evidence of newspapers.com and Google search results. Specifically, defendant contends that EHB misrepresented the number of matches that result for "we buy houses" on each site because

the phrase was not searched with quotes around the words, which would yield results that do not use the three words contiguously.

First, the Memorandum Opinion correctly concludes that "[a] May 2016 search on www.newspapers.com of 'WE BUY HOUSES' produced a staggering *52,295,853* matches" and [a] Google search of 'we buy houses' yields hundreds of thousands of pages of results." Defendant did not properly dispute this fact. Therefore, it is properly admitted. Indeed, a search of "we buy houses" (in quotes) on Google.com yields over two million results. Among these results, countless websites reveal instances of companies using the entire phrase—"we buy houses"—to describe the house-buying services offered by the company or third parties referring to a "we buy houses company" which provides house-buying services. This search does not yield a paltry 140 results, as defendant now contends. In any event, plaintiff's attempt to dispute plaintiff's statement of undisputed fact comes too late and is unpersuasive.

Moreover, even assuming *arguendo* the website searches do not turn up the exact number of results that plaintiff listed as an undisputed fact, defendant, as noted, failed to properly dispute this evidence. Again, Local Rule 56(B) requires the nonmoving party to cite to record evidence to dispute the movant's putative undisputed fact. Local Civ. R. 56(B). Here, plaintiff properly listed as an undisputed fact that "[a] May 2016 search on www.newspapers.com of 'WE BUY HOUSES' produced a staggering *52,295,853* matches . . . . A Google search of 'we buy houses' yields hundreds of thousands of pages of results." Br. in Supp. of Pl. Countercl. Def.'s Mot. for Summ. J. ¶ 18 (emphasis in original) (internal citations omitted). In response, defendant "acknowledge[d] that third parties have used the words 'we buy houses'" but asserted that plaintiff's search result evidence is not admissible. As noted in the Memorandum Opinion, the evidence cited by plaintiff is admissible. Mem. Op. 4 nn.2-3. Therefore, because defendant, the

5

nonmovant, failed to cite to evidence to dispute the putative undisputed fact listed by plaintiff, the movant, it was properly taken as an admitted undisputed fact.[1] Local Civ. R. 56(B); Rule 16(b) Scheduling Order ¶ 13, Oct. 19, 2017.

Defendant also argues that even if undisputed, the search result evidence was improperly relied upon as evidence that the phrase "we buy houses" was used generically to describe the service provided and not the source. But it is immediately evident that the newspaper results and Google search results contain examples both of companies advertising the services they provide by using the phrase "we buy houses" and of third parties referring to house-buying companies as "we buy houses companies." *See, e.g.*, Ugo Colella Decl., Ex. 124; Express Homebuyers Dep., 269-70. Therefore, the Memorandum Opinion properly relied upon this undisputed, admissible and relevant evidence.

## IV.

Next, defendant objects to the Memorandum Opinion's understanding and application of controlling trademark law. According to defendant, evidence that companies use "we buy houses" to describe the services they provide is evidence of protected descriptive use and not unprotected generic use. This is incorrect.

The Fourth Circuit has explained that a mark is generic if it "merely employs the common name of a product or service" and does not signify the source of the product or service or distinguish the particular product or service from others on the market. *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004). To show that a mark is generic, a claimant must prove that "the primary significance of the mark [is] its indication of the nature or class of

---

[1] Even accepting defendant's calculation of the number of results from newspapers.com (351,916) and Google (141), it is clear that there is substantial evidence that the phrase "we buy houses" is used extensively to connote a class of services provided and not a specific source of those services. *See Retail Servs.*, 364 F.3d at 546 (finding that 51 newspaper reports using the term generically was evidence that the term was generic).

the product or service, rather than an indication of source" and that the "relevant public" understands the mark to describe the product or services offered and not the source of the product or services. *Id.* at 544 (quoting *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir.1996)). A descriptive mark, on the other hand, "describe[s] a function, use, characteristic, size, or intended purpose of the product and is accorded protection only if [it has] acquired a secondary meaning, that is, if in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996) (internal quotes omitted). The difference, then, is that generic terms describe or signify the product or service itself, whereas descriptive terms describe or signify some feature of the product or service. Indeed, as defendant points out, if the term "answers the question 'what are you,' it is a generic term because it tells the buyer what the product [or service] is, not the source of the product [or service]." *Shammas v. Rea*, 978 F. Supp. 2d 599, 609 (E.D. Va. 2013) (citing McCarthy on Trademark, § 12:1).

In sum, the Memorandum Opinion properly applied the *Retail Services* and *Glover* analysis to find that defendant's Marks are generic. Specifically, as defendant acknowledges, the Memorandum Opinion repeatedly states that the undisputed record evidence demonstrates that the former owners of the Marks, other house-buying companies and potential house-sellers use and understand the phrase "we buy houses" to signify the services offered by the house-buying companies and not the source of the house-buying services. After considering various forms of record evidence, as instructed by *Retail Services*, 364 F.3d at 544, the Memorandum Opinion correctly concluded that the relevant public—house-buying investors and home-selling consumers—understood the Marks to refer generically to a service offered and not to signify distinctively a source of those services.

## V.

Next, defendant argues that the Memorandum Opinion overlooked evidence that the Marks are source-signifying. This argument also fails.

First, defendant points to the PTO's determination in 2006 and 2007 that the Marks were not generic. But as explained in the Memorandum Opinion, "the fact of registration is *prima facie* evidence that the registered mark is not generic," but a "'certificate of registration alone does not immunize' a registration from summary judgment, and sufficient evidence that the mark is generic will justify the award of summary judgment in favor of a party seeking cancellation of a mark." Mem. Op. 7 (quoting *Retail Servs.*, 364 F.3d at 542-44). As noted above, the Memorandum Opinion considered substantial record evidence that the former owners of the Marks, other house-buying companies and potential house-sellers use and understand the phrase "we buy houses" to signify the services offered by the house-buying companies and not the source of the house-buying services. This is sufficient to rebut the presumption against genericness stemming from the PTO's registration of the Marks.

Second, defendant emphasizes WBH CEO Brandt's testimony that "when people hear the phrase 'we buy houses,' they think of our company." Brandt Decl. ¶ 18. As explained in the Memorandum Opinion, "such sparse and self-serving evidence is insufficient to create a genuine dispute concerning whether the Marks have acquired secondary meaning in the face of plaintiff's overwhelming and undisputed evidence that third parties use and understand the Marks . . . as describing a service and not a source." Mem. Op. 9-10. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Retail Servs., Inc.*, 364 F.3d at 547).

Third, defendant argues that the Memorandum Opinion ignored defendant's evidence of the marketing efforts by the former and current owners of the Marks and its exposure to potential

consumers, which it claims have strengthened the so-called "We Buy Houses brand." The Fourth Circuit in *Retail Services* considered and flatly rejected a similar argument. There, the defendants contended that the district court had ignored "substantial evidence" that the mark at issue was strong and commercially successful with a well-established secondary meaning. *Retail Servs.*, 364 F.3d at 547. Specifically, the defendants there pointed to the "100,000 visits per month" its website received, that its magazine had "millions of subscribers," that it had sold "more than 385,000 books, and that it had received "several hundred complaints from consumers" who were seeking defendants' website but ended up on the plaintiff's website. On these facts, the Fourth Circuit held that such evidence of brand success and customer confusion did not overcome plaintiff's evidence that the mark at issue was generic. *Id.* Here, too, the undisputed record evidence that "we buy houses" signifies the services provided and not the source of the services in the understanding of the relevant public, as discussed above, is not put into dispute by defendant's evidence of its attempt to change that understanding. *See Retail Servs.*, 364 F.3d at 547 (evidence of secondary meaning is irrelevant to the genericness inquiry).

## VI.

Defendant next objects to the finding in the Memorandum Opinion that the previous owners of the Marks used the phrase "we buy houses" as a generic description of the services they offered, not to identify the source of the services. Defendant argues that, in fact, the prior owners used the Marks both to signify the services they offered and to signify the source of the services. But importantly, the Memorandum Opinion did not purport to find that the prior owners used the Marks exclusively in a generic fashion. Rather, it noted that the undisputed evidence contained significant examples of the prior owners using the Marks to signify the house-buying services they provided and not the source of the services. Mem. Op. 10-11. And evidence of the

prior owners' generic use of the Marks was properly considered as evidence that the Marks were generic. *See Retail Servs.*, 364 F.3d at 545.

### VII.

Finally, defendant concludes its critique of the Memorandum Opinion by challenging the extension of the finding in the Memorandum Opinion that the mark "We Buy Houses" is generic to defendant's other mark "webuyhouses.com." In support, defendant once again cites to *Booking.com B.V. v. Matal*, 278 F. Supp. 3d 891 (E.D. Va. 2017). In *Booking.com*, the district court found that adding ".com" to an otherwise generic term may make the composite domain name sufficiently distinctive to warrant trademark protection. But in holding that the domain name at issue in that case was distinctive, the district court there first determined that the composite domain name was not generic, *id.* at 918, and secondly found that the mark holder had clearly demonstrated secondary meaning, *id.* at 919-23. Thus, *Booking.com* is plainly distinguishable from this case.

In sharp contrast to *Booking.com*, there is no undisputed evidence that the domain name is other than generic or that it has acquired secondary meaning. Here, as the Memorandum Opinion reflects, there is substantial, undisputed record evidence that the Marks are generic in the view of the relevant consuming public. And unlike the mark owners in *Booking.com*, defendant can point to nothing persuasive, such as a consumer survey, that overcomes this evidence and shows the relevant public understands "webuyhouses.com" as a brand that signifies a particular website on which a customer can procure house-buying services. *See id.* at 915 (finding that the mark owner's consumer survey was "persuasive evidence that the consuming public understands BOOKING.COM to be a specific brand, not a generic name for online booking services"). *See also In re 1800Mattress.com IP, LLC*, 586 F.3d 1359, 1364 (Fed. Cir.

10

2009) ("[T]he correct inquiry is whether the relevant public would understand, when hearing the term "mattress.com," that it refers to online mattress stores . . . . [A]ny term that the relevant public understands to refer to the genus of 'online retail store services in the field of mattresses, beds, and bedding' is generic."). And given the conclusion in the Memorandum Opinion that the "webuyhouses.com" mark is generic, evidence of defendant's advertising efforts is irrelevant. *See Retail Servs.*, 364 F.3d at 547 (evidence of secondary meaning is irrelevant to the genericness inquiry).

Therefore, defendant has cited no authority or record evidence that undermines the conclusion in the Memorandum Opinion that the "webuyhouses.com" mark is generic, based on the substantial, undisputed record evidence that the phrase "we buy houses" is generic and the undisputed record evidence that numerous other similarly named house-buying websites exist.[2] *See In re 1800Mattresses.com*, 586 F.3d 1359, 1363-64 (Fed. Cir. 2009); *In re Hotels.com*, 573 F.3d 1300, 1306 (Fed. Cir. 2009).

## VIII.

For the reasons discussed above and for good cause,

It is hereby **ORDERED** that defendant's motion for reconsideration (Doc. 124) must be **DENIED**.

---

[2] *See, e.g.*, Br. In Supp. of Pl. Countercl. Def.'s Mot. for Summ. J., Appx. 1 (jerredbuysaustinhouses.com; sunrisebuyshouses.com), Dec. of Ugo Colella, Ex. 34 (sisterswhobuyhouses.com, Ex. 40 (www.thecincyhousebuyer.com), Ex. 45 (www.webuyhousesphilapa.com), Ex. 46 (www.corpushomebuyers.com), Ex. 49 (www.sellnowhomebuyers.com), Ex. 83 (cihousebuyers.com), Ex. 85 (www.easyexithomebuyers.com), Ex. 91 (www.webuyhouses.net), Ex. 123 (www.webuydcmetrohouses.com; www.garybuyshouses.com; www.webuyphillyhomesfast.com; www.familyhomebuyers.net; www.webuyuglyhouses.com; www.quickhomeoffers.com; www.lennoxhomebuyers.com; www.metroplexhomebuyers.com; www.webuyhoustonhousesfast.com; www.heritagehousebuyer.com; www.chicagohomebuyers.net; www.1800homebuyers.com; https://floridacashhomebuyers.com; www.njcashhousebuyer.com; www.somdhomebuyers.com; www.barryhomebuyers.com).

11

The Clerk is directed to send a copy of this Order to all counsel of record, and place this matter among the ended cases.

Alexandria, Virginia
August 29, 2018

/s/
_____
T. S. Ellis, III
United States District Judge