# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

EXPRESS HOMEBUYERS USA, LLC, )
    Plaintiff, )
)
v. )   Civil Action No. 1:17-cv-00736
)
WBH MARKETING, INC., )
    Defendant. )
)
)

## MEMORANDUM OPINION

Plaintiff, a Virginia company engaged in the homebuying business, prevailed in the underlying trademark action, and has now filed a motion seeking attorney's fees pursuant to 15 U.S.C. § 1117(a). At issue, post-summary judgment, is whether, as plaintiff contends, this case is an "exceptional case" and thus warrants the award of fees under § 1117(a) of the Lanham Act. For the reasons stated below, plaintiff has not shown that defendant's positions in this litigation were objectively unreasonable, nor that there is a need in this particular case to grant an award of fees in order to advance considerations of compensation and deterrence, nor that this case is otherwise "exceptional." Accordingly, plaintiff's motion must be denied.

### I.

On June 28, 2017, plaintiff filed a complaint pursuant to 15 U.S.C. § 1064 seeking cancellation of defendant's two registered trademarks, "We Buy Houses" and "webuyhouses.com." As is typical in trademark cases, there was in this case a threshold motion to dismiss that was briefed, argued and resolved, followed by the filing of an answer that included, as is also not atypical in trademark cases, various counterclaims. The parties then engaged in discovery, in which various depositions were taken but neither party sought leave to take additional depositions beyond the number permitted by Rule 30, Fed. R. Civ. P., and Local Rule 30, Local

1

Civ. R. Plaintiff also filed a *Daubert* motion raising issues concerning proposed expert testimony. In the end, it was not necessary to reach or decide these issues. After the close of discovery, the parties filed cross-motions for summary judgment with respect to plaintiff's § 1064 claims and with respect to defendant's nine counterclaims.

Following oral argument, a Memorandum Opinion and Order dated August 14, 2018 issued, granting summary judgment in favor of plaintiff with respect to plaintiff's § 1064 claims on the ground that defendant's marks were generic phrases; the undisputed record evidence demonstrated the relevant consuming public, competitors, and the prior owners of the marks used and understood the phrase "we buy houses" to signify generically house-buying services and not the source of those services. *Express Homebuyers USA, LLC v. WBH Mktg. Inc.*, _ F. Supp. 3d _ (E.D. Va. 2018). Summary judgment was also granted in favor of plaintiff as to defendant's trademark infringement and false designation of origin counterclaims because those counterclaims were dependent on the validity of the marks. *Id.* And by Order dated August 29, 2018, summary judgment was granted in favor of plaintiff with respect to defendant's false advertising, defamation, and conspiracy counterclaims. *Express Homebuyers USA, LLC v. WBH Mktg. Inc*, No. 1:17-cv-00736-TSE-IDD, Order, ECF No. 128 (Aug. 29, 2018). Plaintiff has now filed a motion seeking attorney's fees under § 1117(a) of the Lanham Act.

## II.

Section 1117(a) of the Lanham Act provides, in pertinent part, as follows: "[t]he court in *exceptional* cases *may* award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). Two important aspects of this congressional directive are pertinent here. First, § 1117(a) makes clear that fees are to be awarded only in "exceptional" cases. Second, the statute

also clearly provides that the decision whether to award fees in an "exceptional" case is discretionary, not mandatory.

Analysis properly begins with the meaning of the statutory phrase "exceptional cases." This phrase has a well understood meaning in common parlance; exceptional means rare, extraordinary, atypical or aberrant. Indeed, the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* had occasion to construe the phrase "exceptional case" and referred to three dictionaries in defining the word "exceptional" as rare or extraordinary. 134 S. Ct. 1749, 1756 (2014) (citing Merriam–Webster's Collegiate Dictionary 435 (11th ed. 2008); Webster's New International Dictionary 889 (2d ed. 1934); 3 Oxford English Dictionary 374 (1933)). Thus, in drafting § 1117(a), Congress clearly intended to abrogate the American Rule[1] in a narrow range of cases and to grant district courts the discretion to award fees in rare, extraordinary cases when warranted. Otherwise, the American Rule prevails.

A review of the record as a whole in this case makes clear that by no stretch of the imagination is this case "exceptional"; it is not a rare, extraordinary or otherwise unique trademark case. To the contrary, this case is a garden variety trademark case challenging two registered trademarks that use a phrase that is used in common parlance to signify a service.

The Supreme Court's decision in *Octane Fitness*, construing the Patent Act's fee-shifting provision, which is identical to § 1117(a), is particularly instructive here. In *Octane Fitness*, the Supreme Court held that an exceptional case in the Patent Act context is one that "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. Under this standard,

---

[1] The American Rule stands for the principle that "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

3

the instant case is not exceptional because although plaintiff prevailed and defendant lost, neither the substantive weakness of defendant's litigation position nor the manner in which defendant litigated this case "stands out" from the run-of-the-mill trademark case.

Nor is there any reason to conclude that *Octane Fitness* has no application here because it occurred in the Patent Act context. Many circuits, including the Fourth Circuit, have applied the *Octane Fitness* standard in § 1117(a) cases, on the ground that § 1117(a) and its Patent Act analog are identical. *See, e.g., Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016); *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014). In *Georgia-Pacific*, the Fourth Circuit vacated the district court's award of attorney's fees pursuant to § 1117(a) and remanded with the instruction to consider whether the case was "exceptional" in light of the *Octane Fitness* standard. *Georgia-Pacific*, 781 F.3d at 719–21. Specifically, the Fourth Circuit in *Georgia-Pacific* explained that a district court may find a case "exceptional" under § 1117(a) if, in light of the totality of the circumstances, the court finds one of the following grounds[2]:

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner[3]; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

---

[2] In a more recent decision, the Fourth Circuit also explained that "the losing party's conduct need not have been independently sanctionable or taken in bad faith" in order for the case to be deemed "exceptional" if one of the above three grounds is found. *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 487 (4th Cir. 2018) ("*Verisign II*").

[3] It is important to note that the second *Georgia-Pacific* factor is not a license to parties to wait until after the resolution of an action to seek sanctions. Rather, the appropriate remedy for litigation misconduct is to seek sanctions promptly at the time the misconduct occurs because (i) the evidence of misconduct is fresh and (ii) the sanctions can deter further misconduct during the duration of the litigation.

4

*Id.* at 721. Further, and importantly, the prevailing party must prove that a case is "exceptional" under one of the above categories by a preponderance of the evidence. *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 484 (4th Cir. 2018) ("*Verisign II*"). Ultimately, the decision whether or not to find a case "exceptional" on the basis of any of the above grounds is within the discretion of the district court. *Id.* at 484–85; *see also Octane Fitness*, 134 S. Ct. at 756 (holding in the context of the Patent Act's identical fee-shifting provision that "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified.") (internal quotes omitted). The three *Georgia-Pacific* factors, applied here, make clear that this is not an exceptional case.

To avoid this conclusion, plaintiff chiefly argues that this case is exceptional because defendant's position on summary judgment—that the Marks were not generic—was objectively unreasonable, thus satisfying the first *Georgia-Pacific* category. This argument fails because the fact that the PTO had registered the Marks gave defendant an objectively reasonable legal and factual basis to argue that the Marks were not generic, even though the position was ultimately unsuccessful.

To be sure, the Fourth Circuit noted in *Retail Services, Inc. v Freebies Publishing* that "the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection." 364 F.3d 535, 542 (4th Cir. 2004). Indeed, the issuance of a certificate of registration by the PTO arms the owner of the mark with "prima facie evidence that its mark is not generic in the eyes of the relevant public" and that the mark "at a minimum is descriptive and has obtained secondary meaning." *Id.* (quoting *America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001)). Therefore, the effect of a successful registration of a trademark is to shift the burden of production on summary judgment

5

to the party seeking to prove that the mark is generic. *Id.* And, of course, the party seeking to prove the mark is generic may thereafter succeed if that party shows that "the primary significance of the mark [is] its indication of the nature or class of the product or service, rather than an indication of source" from the viewpoint of the relevant consuming public. *Id.* at 544 (emphasis and internal quotes omitted) (citing *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996)).

It is undisputed that defendant's marks were registered by the PTO in 2006 and 2007. This fact weighs strongly against a finding that this case was "exceptional" because the registration created a presumption that the Marks were valid and shifted the burden to plaintiff to overcome this presumption with evidence that the Marks were generic. *See id.* Equipped with this presumption of validity, it was not objectively unreasonable for defendant to take the position that the Marks were valid. To find otherwise would undermine the policy of encouraging trademark owners to defend and enforce their presumptively valid trademarks. *See Georgia-Pacific*, 781 F.3d at 724 n.3 ("Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights."). Therefore, because defendant's Marks were registered by the PTO, defendant's position that the Marks were not generic was not objectively unreasonable.

Plaintiff also argues that this case is "exceptional" because defendant (i) falsely represented that plaintiff was required to prove the Marks were generic by clear and convincing evidence under 15 U.S.C. § 1065 and (ii) incorrectly argued that plaintiff's evidence of generic use was unauthenticated hearsay. To be sure, defendant was incorrect to argue that plaintiff was required to prove the Marks were generic by clear and convincing evidence. *See Retail Servs.*, 264 F.3d at 542 (stating that the party challenging a registered mark must establish the mark is generic by a preponderance of the evidence). And plaintiff's evidence of generic use was supported by

authenticating testimony and was not introduced for the truth of the matter asserted. In any event, plaintiff's argument fails because the Fourth Circuit has explained that a case should not be deemed "exceptional" simply because "snippets of the record or isolated arguments clearly lack merit." *Retail Servs.*, 364 F.3d at 551. Rather, the focus of the "exceptional case" inquiry is whether "defendant's claims and assertions were so lacking in merit that the action as a whole was 'exceptional.'" *Id.* Thus, because defendant's position on summary judgment was not objectively unreasonable, as discussed above, it would be improper to deem the case "exceptional" on the basis of the two isolated flawed arguments that plaintiff has cited.

Plaintiff next argues that defendant's motion for reconsideration of the summary judgment decision makes this case "exceptional" because that motion merely repeated arguments that were already made and rejected on summary judgment. It is true that it is improper to file a motion for reconsideration when "the moving party simply seeks to have the Court rethink what the Court ha[s] already thought through—rightly or wrongly.'" *United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997). Yet importantly, the Fourth Circuit has explained that the question whether a case is "exceptional" turns on whether "the action as a whole"—not some isolated activity in the course of the litigation—"was 'exceptional.'" *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 551 (4th Cir. 2004). This action as a whole was clearly not "exceptional." Therefore, it is not proper to conclude that the case is "exceptional" on the basis that defendant's motion for reconsideration may have been lacking in merit.

Next, plaintiff also argues that this case is exceptional because defendant took positions with respect to defendant's counterclaims that were objectively unreasonable. Specifically, plaintiff argues that it was objectively unreasonable for defendant (i) to argue that plaintiff made actionable, false statements of fact about defendant's commercial activities and (ii) to argue that

7

defendant suffered any actual harm from plaintiff's allegedly false advertising about plaintiff's business. These arguments fail because defendant's position that plaintiff's statements were statements of fact and thus actionable was not objectively unreasonable and because defendant's position that it was harmed by plaintiff's self-advertising activity, even if not meritorious, is insufficient to render the whole case "exceptional."

It is true that disparaging statements are only actionable for claims of false advertising under the Lanham Act and for claims of defamation under Virginia common law[4] if the statements are false statements of fact. *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015); *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1988). Yet, the issue whether a statement is one of fact or opinion rests on whether the statement can "be reasonably interpreted as an assertion of fact"—a question on which reasonable minds could disagree. *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 183 (4th Cir. 1998) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)). Indeed, in this case, plaintiff's statements were determined to be statements of opinion and thus not actionable on the basis of a careful examination of the context and tenor of the statements.[5] *See Express Homebuyers USA, LLC v. WBH Mktg. Inc*, No. 1:17-cv-00736-TSE-IDD, Order at 8–13, ECF No. 128 (Aug. 29, 2018). A close review of the record relevant to this fact-intensive issue makes clear that it was not objectively unreasonable for defendant to claim that plaintiff's statements were statements of fact and therefore actionable for purposes of defendant's claims of false advertising and defamation.

---

[4] The parties did not address, and it is not necessary to reach or decide, whether § 1117(a) applies to state law claims brought pendant to a Lanham Act claim.

[5] Contrary to plaintiff's representation in its motion for attorney's fees, no determination was made as to whether plaintiff's statements about defendant were in fact true. *See Express Homebuyers USA, LLC v. WBH Mktg. Inc*, No. 1:17-cv-00736-TSE-IDD, Order, ECF No. 128 (Aug. 29, 2018) (finding that some of plaintiff's statements "have a factual basis" but concluding that "the remarks at most constitute 'an exaggerated, blustery assertion" not that the remarks were factually true)

Whether defendant's position on defendant's other false advertising counterclaim—that plaintiff's allegedly false self-promotion harmed defendant—was objectively unreasonable is a closer question. The Fourth Circuit in *Verisign, Inc. v. XYZ.COM LLC* ("*Verisign I*") held that a Lanham Act false advertising claimant must show actual rather than mere presumed damages. 848 F.3d 292, 299–300 (4th Cir. 2017). Defendant acknowledges that it lacked evidence that any potential customers had chosen to do business with plaintiff instead of with defendant as a result of plaintiff's allegedly misleading advertisements. Still, defendant confronted and attempted to distinguish *Verisign I* at the motion to dismiss and summary judgment stages, which weighs against a finding that defendant's position was frivolous even though that attempt was ultimately unsuccessful. *See Retail Servs.*, 364 F.3d at 550 (explaining that a relevant consideration in judging the litigation conduct of a party who filed unsuccessful Lanham Act counterclaims is whether that party cited controlling law). In the end, it is unnecessary to reach a conclusion as to whether defendant's position on this counterclaim was objectively unreasonable. Given that defendant's positions on summary judgment and on defendant's other counterclaims were not objectively unreasonable, there is no basis to deem the entire case "exceptional" based solely on defendant's meritless position on this counterclaim. *See id.* at 551. Therefore, plaintiff's argument that this case should be deemed "exceptional" on the basis of defendant's counterclaim regarding plaintiff's self-advertising fails.

Finally, plaintiff argues that even if the case is not "exceptional" based on the positions taken by defendant in litigating this case, the case should be found "exceptional" under the third *Georgia-Pacific* category owing to the need in this particular case "to advance considerations of compensation and deterrence." *Georgia-Pacific*, 781 F.3d at 721. In essence, plaintiff argues that prior to this lawsuit defendant acted as a trademark troll that bullied competitors to stop using an

9

important marketing phrase—"we buy houses." This argument fails because courts have sensibly concluded that it is not appropriate for a district court to police the marketplace and punish so-called trolls who take steps to protect their presumptively valid rights in intellectual property.[6] *See, e.g., Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 1:13CV0740 (AJT/TCB), 2015 WL 7283108, at *5 (E.D. Va. Nov. 17, 2015) (holding that the case was not "exceptional" under the Patent Act's fee-award provision, which is identical to §1117(a)'s, and explaining, "the Court draws no adverse inferences solely from IV's status as a patent assertion entity"). Indeed, plaintiff's argument conflicts with the Fourth Circuit's clear policy that trademark owners should be encouraged, rather than deterred, to enforce their presumptively valid trademark rights. *See id.* at 724 n.3 ("Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights.").

In summary, plaintiff has pointed to no sound basis for concluding, by a preponderance of the evidence, that this case is "exceptional, that it "stands out" from any other ordinary trademark case. *See Octane Fitness*, 134 S. Ct. at 1756. To adopt a fitting analogy, if the proverbial bell curve representing the range of trademark cases was developed, this case would clearly fall in the middle, or at least within two standard deviations of the mean. Therefore, because this case is not "exceptional," plaintiff's motion for attorney's fees must be denied.

---

[6] The parties did not specifically address the question whether § 1117(a) and the Patent Act analog has any applicability to conduct outside the scope of the trademark case.

10

An appropriate Order will issue.

Alexandria, VA
October 25, 2018

/s/
_____
T. S. Ellis, III
United States District Judge